# HAMPTON vs. THE STATE.

[ INDICTMENT FOR MURDER. ]

1. *Charge to jury on trial of indictment for murder; what improper.*—In a prosecution for murder, a charge to the jury that they " must infer malice" from the killing, when there is some evidence that the killing was accidental, is improper.

2. *Same; what charge improperly refused.*—The refusal of the court to charge, on the request of the defendant, that a criminal intent is nec- essary to be shown in order to justify a conviction for manslaughter, is . error, if the charge is moved for in writing. There must be a criminal intent, or negligence so gross as to imply it.

3. *Wife of freedman; incompetent as witness for him.*—The wife of a freed- man with whom he intermarried during the existence of their slavery,

according to the ceremonies then permitted to them, and with whom he has continued to live as his wife, since emancipation, is the lawful wife of such freedman ; and she is incompetent as a witness for him or against him in a criminal prosecution, except for violence upon herself.

APPEAL from the Criminal Court of Dallas.
Tried before Hon. GEO. H. CRAIG.

The facts are sufficiently stated in the opinion.

J. C. REID, for prisoner.
JOHN W. A. SANFORD, Attorney-General, *contra.*

PÉTERS, J.—This is a prosecution for murder. The indictment was found at the December term of the criminal court of Dallas county, in the year 1870. The count of the indictment is in the following words : "The grand jury of said county charge, that before the finding of this indictment, John Hampton unlawfully and with malice aforethought killed Jack Porter by shooting him with a gun, against the peace and dignity of the State of Alabama." On this charge the prisoner was properly arraigned, and pleaded not guilty, and on a trial by a jury he was convicted of manslaughter in the second degree, and sentenced to the penitentiary for two years. There was a bill of exceptions taken by the accused on the trial, from which it appears that there was some evidence on the part of the accused which tended to show that the killing was with a gun, and that it was accidentally done, and not willfully and intentionally. There was also other evidence which tended to show that the slayer was somewhat drunken at the time of the killing, and that he did it intentionally.

On this state of the proofs, the court, *ex mero motu,* charged the jury as follows ;

1. "Under this indictment, if the evidence, under the law as laid down by the court, warrant it, the prisoner may be convicted of murder in the first degree ; murder in the second degree ; or manslaughter in the first degree. Murder is the killing of a reasonable person with malice afore-. thought, express or implied. Express malice is evidenced by threats, former grudges, lying in wait, &c. While malice

may be implied from the preparation made, the character of the weapon used, &c. Manslaughter is the wrongful taking of the life of a reasonable being without malice; and it occurs when one takes the life of another in sudden heat of passion without malice."

2. "The court also charged the jury, that if they believed that the killing was done with a gun, they must infer that it was done with malice."

These charges were excepted to by the accused, and made a part of the record by bill of exceptions.

The court then further charged the jury, " that if the evidence satisfies you that the defendant handled the gun in a careless way, and in handling the same presented it in a way so as to be dangerous to the life of Jack Porter, and in such handling killed Jack Porter, although not intending to kill him, then he would be guilty of manslaughter." To this charge the accused excepted, and made it a part of the record.

The defendant then asked the court to give a charge in writing in the following words—that is to say : " That before the defendant can be convicted, it is indispensable that the existence of an intent to commit the offense should be proved by the State beyond a reasonable doubt." This charge the court refused to give, and the defendant excepted and made the same a part of the record, by bill of exceptions.

The statute of this State defining the different degrees of manslaughter is in the following words : " Manslaughter by voluntarily depriving a human being of life, is manslaughter in the first degree ; and manslaughter committed under any other circumstances, is manslaughter in the second degree."—Revised Code, § 3659. This statute does not define what *manslaughter* means in the second part of this section of the Revised Code. We have, therefore, to look to the text-writers and decided cases to learn what are the constituents of this offense. Blackstone, following Chief-Justice Hale, defines *manslaughter* to be " the unlawful killing of another without malice, either express or implied, which may be either voluntarily, upon a sudden heat, or involuntarily, but in the commission of some unlawful

act."—4 Blacks. Com. p. 191, (marg.); 1 Hal. P. C., 466. A homicide, then, in order to make it manslaughter, must be not only willful, but unlawful, or it must be involuntary and without legal excuse. Upon this distinction depends the right of self-defense and excusable homicide by misadventure.—4 Blacks. Com. p. 182, (marg.); 1 Hawk. P. C., 73, 74; 1 Russ. Cr. 656, (marg.) Here there was some proof in favor of the conclusion that the homicide was accidental. Indeed, it may admit of some doubt whether the preponderance of the proof was not in favor of that conclusion. Then the charge, that "if the jury believed that the killing was done with a gun, they *must infer* it was done with malice," was unjustifiable under the evidence in this case. This charge places the guilt or innocence of the accused party upon the character of the instrument used in the killing, and wholly excludes the evidence which tended to show such grounds of excuse for the homicide as would have justified the acquittal of the defendant. Such a charge is improper, and can not be sustained.—*Hall v. The State*, 40 Ala. 69o, 706. The court, then, erred in this charge. This charge is also vicious, because it invades the province of the jury, in giving a conclusive force to evidence which is at least but circumstantial, and in requiring them so to consider it. The jury *may* infer malice from the weapon used in the killing, but the law does not require that they must infer it, from the use of a gun.—*Hobson v. The State*, June term, 1870; 3 Greenl. Ev. § 145.

The charge asked by the defendant below should have been given. The intention with which an act is done, when the offense is *malum in se*, is an element of its criminality. And manslaughter is of this class of crimes, *(Rex v. Wheatly*, 1 Lead. Crim. Ca. 3; 4 Black. Com. 5, (marg.); 1 Bish. Crim. Law, § 364, *et seq.,)* except, possibly, for an involuntary homicide by an unlawful act, or one so grossly negligent, as to become unlawful for that reason.—*Rex v. Mastin*, 6 C. & P. 396; 1 Russ. Cr. 651; *White v. The State*, June term, 1870.

The evidence shows that the woman, Eliza, was, after the fashion allowed to slaves before emancipation, married to the defendant. Such marriages are now made lawful if

the parties have continued to live and cohabit together as husband and wife since emancipation.—Pamphlet Acts, p. 175; Ordn. No. 23, § 1. She was, therefore, an incompetent witness for her husband, or against him, except for violence on herself.—1 Greenl. Ev. § 23ö. The court did not err in excluding her.—*Williams v. The State*, 44 Ala. 24.

The judgment of the court below is reversed. and the cause is remanded for a new trial. In the mean time the appellant, the said John Hampton, will be kept in custody until discharged by due course of law.