# White v. The State.

## *Indictment for Murder.*

1. *Manslaughter in first degree.*—An intention to take life is not a necessary ingredient of manslaughter, even in the first degree.

2. *Homicide by careless act.*—Gross carelessness, even in the performance of a lawful act, causing an injury which results in death, is at least manslaughter.

3. *Same; case at bar.*—The deceased having been thrown from a handcar, on which he was riding with the defendant and others, and which was stopped suddenly as the defendant leaped from it, the evidence tending to show that he put his foot on the brake as he did so; a charge asked, instructing the jury that, if the defendant, "although he may have stepped on the brake in jumping from the car, did not know the result of stopping the car suddenly, then he would not be guilty," is properly refused.

APPEAL from Etowah Circuit Court.

Tried before Hon. JOHN B. TALLY.

One of the counts in the indictment in this cause charged, "that . . . Henry White unlawfully and with malice aforethought, but without premeditation, killed William George, by suddenly stopping a moving hand-car on which the said William George was riding, by suddenly applying, and without warning, putting on or applying the brakes to said hand-car, thereby throwing the said William George from, and in front of said moving hand-car, causing the same to run over the said William George, mashing his head," &c.

The defendant, White, the deceased, William George, and nine or ten other railroad hands were returning on a hand-

[White v. The State.]

car after working hours to Gadsden.   When they approached the corporate line of Gadsden, and were at the top of the grade, the car was stopped and one of the parties got off; some one then said to defendant that he had better get off, and defendant said, "no, he would ride down opposite where he was boarding, and get off."   One witness testified that defendant further said, "no, this car was made to put off men where they want to get off."   The car moved off, down grade, and was running at the rate of ten or fifteen miles per hour.   Just before the car reached the point opposite defendant's boarding house the brakes were "rather put on," and some one said to defendant: "Don't put on the brakes."   The car did not then stop, and when it arrived opposite his boarding house the defendant sprang from the car, and that instant the car stopped suddenly; the front wheels jumped the track, all the parties that were on the car were thrown from it, the car moved forward a little way, and William George was instantly killed.

There was a brake on the car which extended four or five inches above the platform of the car and upon which defendant probably stepped when he jumped from the car, although none of the witnesses testified that they saw defendant step on the brake.   There was evidence that deceased, who was the "Boss," cautioned the hands about putting on brakes slowly, or some one would be hurt.

The following charges numbered 6 and 7 were requested by defendant, and were refused by the court.

6.   "That before the defendant could be convicted it is indispensable that the existence of an intent to commit the offense should be proved by the State beyond a reasonable doubt."

7.   "That the jury may look to the evidence (if there be such) tending to show that the defendant was "green" or knew but little about railroads, in ascertaining whether or not he knew, what the result would be by stopping the car suddenly.   And if they believe from the evidence that the defendant did not know. the result of stopping the car suddenly although he may have stepped on the brakes in jumping from the car then he would not be guilty."

The defendant was found guilty of manslaughter in the first degree and sentenced to the penitentiary for two years.

J. L. CUNNINGHAM, for appellant, cited *Hampton's Case*, 45 Ala. 82.

[White v. The State.]

THOS. N. McCLELLAN, Attorney General, *contra.*—The 6th charge requested by defendant was erroneous. There are many cases which hold that the jury in such cases need not find that there was an intention to kill.—36 Ala. 285; 69 Ala. 247; 74 *Ib.* 21; 65 *Ib.* 446; 68 *Ib.* 476. The 7th charge was erroneous in that the first part was abstract, and in the last part it required the jury to find as a condition precedent that the defendant knew, not only, that it was dangerous to stop the car, but what the particular result of so doing would be.

STONE, C. J.—Intention to take life is not necessarily an ingredient of manslaughter, even in the first degree. *Harrington v. State*, 83 Ala. 9; *Williams v. State, Ib.* 16. The sixth charge asked for the defendant was rightly refused.

One clause of the seventh charge asked to be given to the jury was, that "if they believe from the evidence that the defendant did not know the result of stopping the car suddenly, although he may have stepped on the brake in jumping from the car, then he would not be guilty." This clause of the charge ignores all other inquiries than the want, on the part of the defendant, of knowledge of the effect of stopping the car suddenly. Had the charge been given, it would have been the duty of the jury to acquit, even though they found that the defendant stepped on the brake knowingly and intentionally, and that he knew the effect of stepping on the brake would be to stop the car suddenly. Gross carelessness, even in the performance of lawful acts, is punishable, if another is injured thereby; and if the injury result in death, it is at least manslaughter.—1 Bish. Cr. Law, §§ 342, 343, 351. This charge was rightly refused, and the record presents no other questions for our review.

Under our statutes, manslaughter has two degrees. The first is, "by voluntarily depriving a human being of life." That offense is fully discussed and defined in *Harrington's Case*, 83 Ala. 9, and we need add nothing to it.—Code of 1886, § 3731. In § 3732 another offense resulting in death is made manslaughter in the first degree, but it has no bearing on this case. We have said, "To constitute manslaughter in the first degree, there must be either a positive intention to kill, or an act of violence from which ordinarily, in the usual course of events, death or great bodily harm may result.—*Harrington's Case.* We were interpreting

[Lawrence v. The State.]

§ 3731 of the Code—the statute by which the guilt of the present defendant must be measured. If the record fairly sets forth the testimony, it is difficult to perceive how the defendant could be guilty of voluntary manslaughter, unless the jury were convinced he intentionally stopped the car. This question, however, is not before us, and we have no power to grant any relief.

Affirmed.

