# Fitzgerald v. The State.

## *Indictment for Murder.*

1. *Accidental killing; when carelessness is, and when not, the equivalent of criminal intent.*—A homicide, which results from the doing of an act which is not unlawful in itself, is not criminal, unless there existed a criminal intent; or if such act resulting in the homicide was done carelessly or negligently, to constitute criminality there must have been that aggravated carelessness or negligence which is denominated "gross," and which is such a departure from what would have been the conduct of an ordinarily careful and prudent man un-

[Fitzgerald v. The State.]

der the same circumstances as implies an indifference to consequences, and takes the place of a criminal intent; but if the killing was the result of carelessness of such low degree or trivial character as to have been purely an accident, there is no criminality in the homicide, and the person inflicting the fatal blow is not criminally responsible.

2. *Same; same; charge of court ignoring certain tendencies of the evidence.*—On a trial under an indictment for murder, when the testimony for the State tended to show that upon the deceased commenting on a pistol lying near defendant, who was behind a bar counter, the latter picked it up and, pointing it at deceased, fired, inflicting the fatal wound, while the testimony for the defendant tended to show that he and deceased were the best of friends, and that in response to the latter's commenting on the pistol, he picked it up to show it, and was in the act of handing it to deceased, but not in a grossly careless way and with no intention of shooting him, when it was accidentally discharged, it is error for the court, in its general charge given *ex mero motu* to ignore the tendency of defendant's evidence, and instruct them to convict if they find that the defendant was negligent or careless in any degree in attempting to hand the pistol to the deceased, and that the homicide resulted from such carelessness.

3. *Same; evidence of relation existing between defendant and deceased admissible.*—Where on a trial under an indictment for murder, the issue is whether the killing was intentional or accidental, testimony tending to show that defendant, although apparently friendly with deceased, was influenced by jealously towards him in relation to a certain woman, is admissible.

4. *Evidence; bias of witness.*—Where, on the trial of a criminal case a witness has given testimony tending to impeach a witness for the State, it is competent for the State to show, on his cross-examination, that at the time of the trial, said witness was a co-employé of the defendant at the same place of business, although he was not so employed at the time of the commission of the offense for which defendant was being tried.

APPEAL from the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

The appellant, John Fitzgerald, was tried under an indictment charging him with murder in the first degree, for killing one William Case ; and was convicted of manslaughter in the second degree, and sentenced to imprisonment in the county jail for six months.

Upon the trial of the cause, as is shown by the bill of exceptions, the evidence for the State tended to show that on the night of August 19, 1895, William Case, the deceased, in company with two friends, went into a bar room wherein the defendant, John Fitzgerald, was the

bar keeper, and who was, at the time, behind the bar counter ; that while the deceased and his friends were standing in front of the bar talking, the deceased commented on the defendant having two good looking pistols lying on the back bar shelf ; that thereupon the defendant said : "Yes, and I am crackerjack with them," and picking up one of the pistols and pointing it at the deceased fired, the ball striking the deceased in the forehead, from the effects of which wound he died in December following.

The testimony for the defendant tended to show that he and deceased were the best of friends and were frequently together ; that at the time the deceased, with two other men, came into the bar room, and the deceased commented on the pistols lying on the back bar shelf, the defendant said, "Yes, they are crackerjacks," and picked up one of them ; that he turned around and was in the act of handing the pistol he picked up over the counter to the deceased, when the pistol fired with the result above stated. The defendent as a witness in his own behalf testified that he did not have his hand upon the trigger, and was not pointing it at the deceased ; but was passing it over the counter towards him when it was accidentally discharged.

During the examination of one Murray Richardson, a witness for the State, he testified that two days prior to the shooting he had carried a note for the defendant to a woman, whereupon the solicitor asked said witness the following question : "When you came back, what did you tell Mr. Fitzgerald, the defendant?" The defendant objected to this question on the ground that it was irrelevant and immaterial, but the court overruled the objection, and the defendant duly excepted. The witness answered : "He asked me if I brought an answer, and I told him I did not have any answer, and he asked what she said, and I told him she said she did not want any of his notes and nothing to do with him ; and then he asked if that damned little fellow Willie Case was up there, and I told him I didn't know, that I didn't go inside." The defendant moved the court to exclude this answer of the witness as irrelevant, illegal, incompetent and immaterial. The court overruled the motion, and defendant duly excepted.

On the cross-examination of a witness for the State,

after he had testified to facts ·tending to impeach the testimony of Murray Richardson, the solicitor asked said witness several questions eliciting from him that he was, at the time of the trial, employed at the same bar with the defendant, but at the time of the shooting was not in ˙such employ. To each of these questions and answers thereto the defendant separately objected, and separately excepted to the court's overruling each of his several objections. There was other evidence introduced on the part of the defendant tending to impeach the testimony of Murray Richardson in reference to the remark which he testified defendant made about the deceased in connection with the woman to whom he sent the note. There was also evidence tending to show the good character of the defendant.

Upon the introduction of all the evidence, the court in the general charge to the jury, instructed them, among other things, as follows: "Gentlemen of the jury, if you should believe from the evidence beyond a reasonable doubt, that the defendant at the bar was behind the counter and the pistol was lying there, and that Willie Case, whom it is alleged was killed, came up to the bar, and the defendant picked up that pistol determined beforehand to kill Willie Case, and did shoot Willie Case with that pistol intending to kill him with the pistol, Willie Case doing nothing, and he shot him without justification, mitigation, or excuse, and that was done in Mobile county before the finding of the indictment, and that then Willie Case died from the effects of the shot before the finding of the indictment, then he (the defendant) would be˙ guilty of murder in the first degree." To this portion of the court's general charge the defendant separately excepted and also separately excepted to the following portion of the court's general charge: "Manslaughter in the second degree, is where one person, in doing an unlawful act, which is not felony, kills another one, not intending to kill him, or where one doing a lawful act, does it in such a careless way that death is the result of the carelessness of the party, although he did not intend actually to kill the party." The court also instructed the jury, in its general charge, among other things, as follows: "It is in two categories: First, that he is doing an unlawful act and that death is the result of the unlawful act, the

defendant not intending to kill the man (that is some other unlawful act than the killing of the man), and death results from that, that would be manslaughter in the second degree; or, second, *if the defendant is doing something he has a legal right to do, and he does that in a careless and negligent manner, and kills one by reason of his carelessness and negligence, that would be manslaughter in the second degree."* To so much of the last quotation as is in italics, the defendant separately excepted.

There were several charges requested by the defendant, to the refusal to give each of which the defendant separately excepted; but it is deemed unnecessary to set them out in detail.

EDWARD M. ROBINSON, for appellant.

WILLIAM C. FITTS, Attorney-General, for the State, cited *Johnson v. State,* 94 Ala. 35; *Jenkins v. State,* 82 Ala. 25; *Hampton v. State,* 45 Ala. 83.

McCLELLAN, J.—It is laid down by Mr. Bishop that "every act of gross carelessness, even in the performance of what is lawful, and, *a fortiori,* of what is not lawful, and every negligent omission of a legal duty, whereby death ensues, is indictable either as murder or manslaughter."—1 Bish. Cr. Law, § 314. And that author gives the reason underlying the doctrine of criminal carelessness, thus: "There is little distinction, except in degree, between a positive will to do wrong and an indifference whether wrong is done or not. Therefore, carelessness is criminal; and, within limits, supplies the place of the direct criminal intent."—*Ib.*, § 313. He says further on this subject that "there may be a degree of carelessness so inconsiderable as not to be taken into account as criminal by the law," (*Ib.*, § 216); and again, that a consideration of the principles upon which criminal responsibility for the results of carelessness rests will impress the student "with the general truth, that in the criminal department, as well as in the civil, our law, under proper circumstances, declines to take into its account things trivial and small."—*Ib.*, § 222. Our own adjudications are in line with these texts, and always predicate criminality, not upon mere negligence or carelessness, but upon that degree of negligence or

carelessness which is denominated "gross," and which constitutes such a departure from what would be the conduct of an ordinarily careful and prudent man under the same circumstances as to furnish evidence of that indifference to consequences which in some offenses takes the place of criminal intent. Thus, in *Hampton v. State*, 45 Ala. 82, it is said : "There must be a criminal intent or negligence so gross as to imply it." And in *White v. State*, 84 Ala. 421, 423, is this language : "Gross carelessness, even in the performance of lawful acts, is punishable, if another is injured thereby." There can, we therefore think, be no doubt upon authority and principle that homicide may result from carelessness of such low degree or trivial character in the performance of a lawful act as not to involve criminality in the person so carelessly performing the act ; and it follows, that criminality cannot be affirmed of every lawful act, carelessly performed, and resulting, because of such carelesness, in the death of another. The carelessness must be aggravated, so to speak ; it must be gross, implying an indifference to consequences. For illustration, employing some of the circumstances involved in some of the tendencies in the evidence in the present case : The deceased, standing in front of a saloon counter, requests the defendant, who is behind the counter, to hand him a pistol lying on the shelf behind the defendant. If the latter in complying with the request threw the weapon down on the counter in front of deceased and it was thereby discharged, killing deceased, this would be at least manslaughter in the second degree, though defendant did not intend to injure deceased and did not suppose the pistol would be discharged. But if the defendant in passing the weapon to deceased inadvertently held the muzzle towards him, and it was accidentally discharged with fatal results, the defendant is not criminally responsible, for though that method of handing the weapon to the deceased involved, or may have involved, carelessness, it was of too slight a degree, too trivial for criminality to be affirmed of it.

The evidence before us presents three tendencies in respect of defendant's conduct on the occasion of the shooting : *First*, that he intentionally and with malice shot the deceased. This, of course, would have justified and required conviction of murder, if the jury had found

in line with this tendency of the evidence. *Second*, that the pistol was discharged without intent on the part of the defendant, but when he was in the act of pointing or aiming it at the deceased. On this phase of the evidence, if believed by the jury, the defendant was guilty of manslaughter in the second degree because of the unlawfulness of the act he was committing at the time of the shooting.—Acts, 1888-89, p. 67; *Sanders v. State*, 105 Ala. 4. And, *third*, that the defendant did not intentionally shoot the deceased or point or aim the pistol at him, but that, while he did not attempt to hand the weapon to the deceased in the most careful and prudent manner, or even in such mode as would ordinarily have been adopted by careful and prudent men, was yet not guilty of that degree of carelessness which the law terms gross, and which affords grounds for the implication of indifference to consequences on the part of defendant. If the jury found only this character of carelessness on defendant's part and that the homicide resulted from it, the defendant was entitled to a verdict of acquittal.

The trial court, in its general charge given *ex mero motu* to the jury, took no account of the tendency of the evidence last considered, and in effect instructed the jury to convict if they found that the defendant was negligent or careless in any degree in attempting to hand the pistol to deceased, and that the homicide resulted from such carelessness. This was error on the principles we have announced, and must work a reversal of the judgment below.

There was indeed no evidence in the case of gross carelessness on the part of the defendant in handling the weapon. According to the State's evidence the defendant shot deceased either intentionally and maliciously, or while performing the unlawful act of pointing or aiming the pistol at him. The evidence on the part of the defendant was that the parties were on the friendliest of terms, that defendant did not intend to shoot deceased, that he did not point or aim the pistol at deceased, but that while he was handing it over the counter, in compliance with the request of deceased, he, defendant, not having his hand on the trigger, it was accidentally discharged. When reference is had to all this evidence, some of the charges requested by the defendant, to the effect that if the jury should find there was not inten-

tional shooting, and that defendant was not at the time when the shot was fired pointing or aiming the pistol at the deceased, but that the shot was accidental, etc., should have been given.

We find no error in the court's rulings on evidence or in respect of other charges refused to the defendant, each of which was faulty in one or more respects under decisions of this court.

Reversed and remanded.