# Linnehan *v.* The State.

### *Indictment for Murder.*

1. *Homicide; trial and its incidents; former conviction for murder in the second degree to be an acquittal of the higher offense must be specially pleaded; when special jury must be drawn on second trial.*—On a trial under an indictment for murder, a conviction of murder in the second degree is an acquittal of the higher offense; but to be available as such acquittal, the former conviction must be specially pleaded on the second trial, and not being specially pleaded, the defendant is entitled to the observance of the mandatory requirements of the statute as to the fixing of the day and the drawing of the special venire for the second trial, and to have a list of the jurors and a copy of the indictment served upon him, as if there had been no former trial; and the failure to observe such requirements constitutes a reversible error, and this error is not cured by the statement of the solicitor, after motion to quash the venire because of such failure is overruled, that he would elect to prosecute the defendant for murder in the second degree.

2. *Organization of jury; sufficiency of return of jury commissioners.* The fact that the county commissioners in returning to the clerk the list of grand and petit jurors drawn by them, signed the return as county commissioners and not as jury commissioners, does not vitiate the return, and furnishes no ground for a motion to quash the indictment; the commissioners being the same officers charged with the same duties, whether styled in the one or the other way.

3. *Same; failure of jury commissioners to take the oath prescribed.* Where it is shown that the jury commissioners have performed their duties in reference to the drawing of the juries in accordance with the requirements of the statute, no objection can be taken to their acts, on the ground that they had not taken the oath prescribed; and in the absence of proof to the contrary, the court will presume that the commissioners took the prescribed oath.

4. *To what witness may testify; opinion or judgment.*—Where, in response to the question as to what was the distance between two

[Linnehan v. The State.]

designated places, which called for material evidence, the witness answers that he does not know, it is permissible to ask the witness to give his best judgment as to the distance; and it is no objection to the second question that the witness had stated that he did not know the distance, since, even if he did not know the exact distance, it was competent for him to give his best judgment as to what it was.

5. *Examination of a witness; discretion of trial court.*—It is within the discretion of a trial court to determine whether or not the examination of a witness is being conducted in a proper manner; and in the absence of its being clearly shown that in the examination the counsel transcended the limit of legal propriety in his manner towards the witness, the ruling of the trial court in overruling an objection to the manner of the counsel will not be reviewed.

6. *Same; statement of collective facts admissible.*—On a trial for murder, questions asked a witness, "If he heard the defendant, just before the shooting, call the deceased hard names? Was the defendant very angry? If the defendant cursed the deceased in the witness's presence?" are not objectionable, upon the ground that they called for the conclusion of the witness; the questions calling for the statement of collective facts, which are admissible.

7. *Same; right to refresh witness' recollection.*—On a trial under an indictment for murder, when, in answer to the questions propounded to a witness, asking what "hard names" the defendant used toward the deceased just before the shooting, the witness answered that she did not know, it is permissible for the solicitor to ask the witness "Didn't you tell me right here what he said?" such questions being intended as an effort to refresh the witness' memory. But a subsequent question by the solicitor to the same witness: "Did you not tell me that the defendant said he would put a hole through the deceased's carcass?" is improperly asked, and the answer in the affirmative should be excluded.

8. *Homicide; charge to the jury assuming the killing of deceased by the defendant.*—On a trial for murder, although there is no dispute in the evidence that the deceased was killed by the defendant, it is error for the court to charge the jury "If you believe the evidence beyond a reasonable doubt you will find that within this county and before the finding of this indictment a homicide had been committed, *and that Allen Oakley* (the deceased) *was the victim and John Linnehan* (the defendant), *was the perpetrator;*" the words italicized having a tendency to make an unfavorable impression upon the minds of the jury as to the character of the homicide.

9. *Same; duty of retreat.*—On a trial for murder, an instruction to the jury that "If the defendant could have escaped without increasing his peril, it was his duty to do so," standing alone, is erroneous; since such instruction should have been accompanied with the qualification that it was the defendant's duty to retreat, unless the circumstances justified the reasonable belief that he could not do so with apparent safety, or that he could not escape without apparently increasing his peril.

[Linnehan v. The State.]

APPEAL from the Circuit Court of Walker.

Tried before the Hon. JAMES J. BANKS.

The indictment in this case charges the appellant, John Linnehan, with murder in the first degree. At a former term of the circuit court the defendant was convicted of murder in the second degree, and on appeal to this court from that judgment of conviction, the judgment was reversed. There is nothing in the record on the present appeal showing these facts ; but according to the present record the defendant, when he was put upon his trial, was charged with murder in the first degree. The record fails to show any order setting a day for the trial of the case, or that there was a service upon the defendant or his attorney of a copy of the indictment and venire drawn for the trial of this case.

Upon the case being called for trial, and before entering upon the same, the defendant moved the court to quash the indictment upon the following grounds : "1st. Because the persons composing the grand jury which found the indictment were not drawn in the presence of the officers designated by law. 2d. Because the persons who drew the persons composing the grand jury which found the indictment had not qualified themselves as jury commissioners." In support of this motion, the defendant offered the oaths of office filed by the county commissioners, which were taken by them as county commissioners, and also introduced the original list of persons filed in the office of the clerk of the circuit court containing the names of the persons drawn to serve as grand jurors for the term of the court at which the indictment against the defendant was found. This list was signed by "W. W. Wethington, Carter Scott, Eli Hyche, W. M. Sheerer, Co. Commissioners." The court overruled this motion, and the defendant duly excepted. The defendant then moved the court to quash the venire for this week, upon the grounds that it was not drawn as required by law. This motion was overruled, and the defendant duly excepted. The defendant then moved to quash the venire in this case upon the following grounds : "1st. The indictment charges him with murder in the first degree, and no copy of the venire has been served on him or his attorney. 2d. For that no copy of the indictment has been served on him or his attorneys. 3d. For that no special venire has

[Linnehan v. The State.]

been drawn for the trial of this case. 4th. For that no copy of the special venire drawn for the trial of this case has been served on defendant or his attorney. 5th. For that no copy of the regular petit juries drawn and summoned for this week of this term of the court has been served on the defendant or his attorneys. 6th. For that no copy of petit juries organized for this week has been served on the defendant or his attorneys." In support of this motion the defendant offered in evidence the record in the case. The bill of exception recites that then "The solicitor stated to the court that he would elect to prosecute the defendant for murder in the second degree." The court thereupon overruled the motion, and the defendant then and there duly excepted.

The evidence introduced by the State tended to show that in Walker county, Alabama, before the finding of the indictment, the defendant, John Linnehan, killed Allen Oakley, deceased, by shooting him with a pistol. The ball entered the body of Oakley under the left shoulder blade about four inches from the backbone and came to the surface under the right nipple. It further tended to show that Oakley was marshal of Carbon Hill; and that the killing was done under the following circumstances : One George Fram was to have a trial before the mayor of Carbon Hill. The case was called and continued. When Oakley walked out on a small porch in front of the mayor's office, Linnehan asked him why he had the trial put off, and Oakley said he was running that court. Linnehan told him "he was running it a hell of a way." Linnehan was then standing on the porch and stepped off, and put his hand in his hip pocket. Oakley then told Linnehan to go off and let his business alone, that he wanted peace and must have peace. Linnehan started up the street going west, and as he walked off said : "Damn you, if you havn't got peace, I will give it to you." Oakley then said : "John, don't curse me now. You must not curse me," and stepped down from the porch. Linnehan got about fifteen feet from Oakley, and called him an opprobrious epithet, and drew his pistol and held it down by his right side, and as Oakley advanced towards Linnehan and got within eight or ten feet, Linnehan turned and shot at Oakley. Oakley then turned to leave and took

two or three steps, when Linnehan shot again and Oakley grunted and ran, staggering, about twenty-five feet and fell; the second shot being the shot that killed him. Some of the State's witnesses testified that Oakley had his right hand up gesticulating with it and nothing in his hand at the time he advanced on Linnehan, up to the time of first shot; and one witness testified he had both hands up. The State's testimony further tended to show that just after the shooting Linnehan gave himself up to one Lone Tesney, and told Lone Tesney that he shot Oakley, that he ran, but he shot him anyway; and if he had not killed him he would go back and finish him.

The evidence for the defendant tended to show that the killing took place under the following circumstances: Linnehan went to the mayor's office, where the trial of the said George Fram was to be held. The trial had been postponed a number of times. It was announced that evening that the trial was again continued. The mayor came out of his office, and the defendant asked him why the case was again postponed. While the defendant and the mayor were talking about the case, Oakley stepped up and told Linnehan that he was running that court, and for Linnehan to go away and attend to his own business. At the same time Oakley put his hands in Linnehan's breast and pushed him away. Linnehan stepped off the porch and started up the street. As Linnehan walked away Oakley continued to talk about attending to his own business and having peace. Linnehan said, "Damn it, you've got peace." Oakley said: "John, you must not curse me," and stepped down off the porch towards Linnehan. Linnehan while he was still walking away called Oakley an opporbrious epithet. When Oakley stepped down from the porch, he put his right hand to his hip pocket and started towards Linnehan, and was pulling and jerking at something. When Linnehan first shot, Oakley turned his left side to Linnehan and still pulled at something in his hip pocket. Then Linnehan shot again and Oakley grunted and ran, and no more shots were fired. A large number of persons were present and saw the difficulty. Both Linnehan and Oakley were in their shirt sleeves. Immediately after the shooting Oakley was examined and a pistol found in his right hip pocket.

Some of the witnesses said it was in the right hip pocket, and others said it was in the left hip pocket.

The facts pertaining to the rulings upon the evidence, to which exceptions were reserved, and which are reviewed on the present appeal, are sufficiently stated in the opinion.

In the general oral charge to the jury the presiding judge instructed them as follows: "If you believe the evidence beyond a reasonable doubt, you will find that within this county and before the finding of this indictment, a homicide has been committed, and that Allen Oakley was the victim, and John Linnehan the perpetrator." The judge further said in his oral charge: "The next question of fact is, could the defendant have made his escape without increasing his peril." The judge said further in his oral charge: "If the defendant could have escaped without increasing his peril, it was his duty to do so." To the giving of each of these separate portions of the court's oral charge the defendant separately excepted, and also separately excepted to the court's refusal to give the general affirmative charge requested by him.

COLEMAN & BANKHEAD, for appellant.—1. The indictment in this case charges the defendant with murder in the first degree. At a former term of the circuit court the defendant was convicted of murder in the second degree, and on appeal the case was reversed. There is in the present record nothing showing this. According to the present record, the defendant, when he was tried, stood charged with murder in the first degree. The record fails to show any order setting a day for the trial of the case. This was fatal to the record, and must work a reversal.—*Burton v. State*, 115 Ala. 1; *Spicer v. State*, 69 Ala. 159; *Jordan v. State*, 81 Ala. 20.

2. The motion to quash the indictment upon the ground that the grand jury was not drawn in the presence of the officers designated by law, and that the persons who drew the grand jury had not qualified themselves as jury commissioners, should have been sustained.—Section 1, Jury Law, p. 132, Cr. Code of 1886; *Steel v. State*, 111 Ala. 32.

3. The charge instructing the jury that "Allen Oakley was the victim and John Linnehan the perpetra-

[Linnehan v. The State.]

tor," was prejudicial to the defendant, and should have been given.—*People v. Williams*, 17 Cal. 146 ; *Griffin v. State*, 90 Ala. 596.

4. The proposition contained in the oral charge, that if the defendant could have escaped without increasing his peril it was his duty to do so, requires too much of the defendant. He is not required to attempt a visionary or unreasonable mode of escape. The law only requires that a defendant shall take advantage of a reasonable mode of escape.—*Cross v. State*, 63 Ala. 48 ; *Cleveland v. State*, 86 Ala. 10 ; *Ex parte Brown*, 65 Ala. 446 ; *Holmes v. State*, 100 Ala. 84 ; *Keith v. State*, 97 Ala. 32 ; *Springfield v. State*, 96 Ala. 81 ; *Compton v. State*, 110 Ala. 37 ; *Naugher v. State*, 105 Ala. 26 ; *Poe v. State*, 87 Ala. 65.

WILLIAM C. FITTS, Attorney-General, for the State. cited *Lowery v. State*, 98 Ala. 46 ; *Martin v. State*, 77 Ala. 1 ; *Karr v. State*, 100 Ala. 4 ; *Jenkins v. State*, 82 Ala. 25.

HARALSON, J.—1. The record in this case does not show that the defendant had been once tried on this indictment, and convicted of murder in the second degree. The court did not set a day for the trial of the cause, and order the number of jurors prescribed by the statute for the trial, and have a list of them and copy of the indictment served on the defendant, in the manner prescribed for the trial of capital cases.—Cr. Code of 1886, p. 134, § 10 of the jury law. . Nor does it appear of record that the defendant pleaded specially that he had been acquitted on a former trial of murder in the first degree in order to avoid a conviction of that offense as required in such cases by Rule 31, p. viii, 82 Ala. That rule makes it the duty of the court to require the defendant, in a case for it, "to announce his election to file or waive his plea of former acquittal." His election to file this plea or to waive it should appear of record. If he file it, its truth may be confessed by the solicitor, in which case no order for a special jury to try him shall be made. None of the prerequisites for a failure to set a day for the trial of this cause as for a capital offense, and the summoning of a special *venire* for the trial, appear in the transcript of the record ; and as for anything

there appearing, the defendant was tried for an offense which might have been punished capitally, without observing the mandatory requirements of the statute for such a trial. This was erroneous.—*Burton v. The State*, 115 Ala. 1. The error was not cured by what occurred afterwards in the course of the trial, appearing alone from the bill of exceptions, as to the statement of the solicitor, that he would elect to prosecute the defendant for murder in the second degree.

2. The grounds for quashing the indictment set out in the motion therefor were not well taken. The fact that the commissioners returned the list of jurors, grand and petit, drawn by them to the clerk, signed as county commissioners, and not as jury commissioners, did not vitiate their return. Section 1 of the jury law (Cr. Code of 1886, p. 132) provides, "that the county commissioners of the various counties of this State, not including probate judges, shall constitute a board of jury commissioners who shall discharge and perform in their respective counties all the duties in relation to the selection and drawing of grand and petit juries now required by law," etc. This return was as well signed by the county commissioners, styling themselves as such, as if they had styled themselves jury commissioners. They were the same officers, charged with the same duties, whether styled in the one or the other way.

3. Nor was there merit in the motion to quash the indictment on the ground that the jury commissioners had not taken the oath prescribed. The statute requires the commissioners in addition to the oath required by law, as commissioners, to take an oath "faithfully to discharge the duties required of them under this act, and to keep secret the counsel of themselves and their associates," etc., "which oath shall be in writing and subscribed by the commissioners as a part of their official oath." In the absence of proof to the contrary, we will presume the commissioners took the prescribed oath.

The evidence offered was insufficient to prove that they had not done so. Even if they had not taken the oath as prescribed, they were *de facto* officers, and having performed their duty in accordance with the requirements of the statute, no objection could be taken to their acts, on account of this omission.

4. The solicitor asked the witness, Robins, how far

Oakley was from Lillich's saloon door when shot. The witness first stated he did not know. The solicitor then asked him to give his best judgment as to the distance, and being allowed to answer, he said, "in his best judgment, it was about ten feet." The defendant objected to the last question when asked, because the witness had previously stated he did not know. The objection was properly overruled. When the witness stated he did not know the distance he evidently understood the solicitor to inquire for the exact distance, which he did not know. It was entirely proper for him to give his best judgment as to the distance, without being exact. *A. G. S. R. R. Co. v. Hill*, 93 Ala. 515.

5. On the cross-examination of defendant's witness, Tipper, the solicitor asked him, "Who he had heard talking of Oakley's reputation as a dangerous man?" The witness, it is to be presumed, had testified that such was the character of Oakley. He replied to the question that he had heard several. This answer was not responsive to the question propounded to the witness by the solicitor. In the bill of exceptions it is then stated, "The solicitor said to the witness in a very loud voice, 'You answer my question.'" The witness replied by giving the names of several persons whom he had heard speaking of Oakley's reputation. Before the witness answered, the defendant objected to the manner of counsel. The court overruled the objection, and the defendant excepted. A witness who testifies in a proper manner is certainly entitled to respectful treatment by the opposing solicitor, and it is the duty of the court, always, not to allow such a witness to be treated with unnecessary disrespect. It would be a reproach to the administration of justice to do so. The good discretion of the presiding judge, however, must be largely trusted in such matters. No one can discover better than he, nor, perhaps, so well, whether counsel in any given case has violated his obligation in this respect or not. What would not be disrespectful demeanor by counsel towards an unwilling and contumacious witness might be very improper towards a witness whose conduct was proper, and who appeared willing to disclose all he knew about the case, when the only excuse counsel could have for treating him with disrespect, was that the witness did not know enough, or anything, to be of service to counsel and his case.

We are unable, from the statement made, to hold that the judge improperly overruled the objection of the defendant to the manner of the solicitor in propounding the question.

6.  On cross-examination by the solicitor of defendant's witness, Robinson, he was allowed, against defendant's proper objection, to ask him if he knew Warren Tipper's business, and to state that Tipper was a hoisting engineer at one of the mines.  Warren Tipper was the witness who had just deposed to Oakley's reputation. We are unable to perceive the materiality or relevancy of this evidence.

7.  The objection to questions by the solicitor to the witness, Mrs. Little, "If she heard Linnehan, just before the shooting, call Oakley hard names?  Was Linnehan very angry? and if Linnehan cursed Oakley in her presence?"—on the ground that such questions called for the conclusion of the witness—was not tenable.  The questions called for the statement of collective facts, subject to the cross-examination as to the facts on which the statement or inference was based.—*Thornton v. The State*, 113 Ala. 43 ; *Ray v. The State*, 50 Ala. 107.  The first of these questions, and the answer to it, however, should have been excluded, since the witness, in answer to the further question of the solicitor, what Linnehan had said in calling Oakley hard names, replied she did not know.

The solicitor, when she said she did not know what hard names he used, said to the witness, "Didn't you tell me right here what he said?"  This was objected to, but the objection was properly overruled.  The solicitor had a right thus to refresh the memory of his own witness.  But, the solicitor went further and asked his witness, "Did you not tell me that Linnehan said he would put a hole through Oakley's carcass?" and the witness was allowed to answer, "Yes, sir."  This was not refreshing her memory as to hard names employed by Linnehan towards Oakley, for the answer had no reference to hard names.  Moreover, the witness did not testify that what she said to the solicitor was true in fact, and yet the answer was allowed to go to the jury. It was purely unsworn hearsay, and ought to have been excluded.—*Sanders v. The State*, 105 Ala. 4.

8.  In the general charge, the presiding judge in-

[Reeves v. The State.]

structed the jury :ˑ "If you believe the evidence beyond a reasonable doubt, you will find that within this county and before the finding · of this indictment, a homicide has been committed, and that *Allen Oakley was the victim and John Linnehan was the perpetrator*." There was no dispute at all that Oakley had been killed, and that Linnehan killed him; and, if the judge had thus stated it, the charge would not be subject to criticism; but we apprehend that the latter part of the charge which we have italicized, from the words *victim* and *perpetrator*, as therein employed, tended to make an unfavorable impression on the minds of the jury as to the character of the homicide, and. should have been avoided.

9. The other part of the oral charge excepted to should have been accompanied with the qualification that it was defendant's duty to retreat, unless the circumstances justified the reasonable belief that he could not do so, with apparent safety, or that he could not escape without apparently increasing his peril.—*Stoball v. The State, ante* p. 454; *Gibson v. The State,* 89 Ala. 121; *Cleveland v. The State,* 86 Ala. 1; *Ex·parte Brown,* 65 Ala. 446.

For the errors indicated, the judgment of the court below is reversed and the cause remanded.

Reversed and remanded.

