184 So. 702

### BARNETT v. STATE.
### 6 Div. 192.

Court of Appeals of Alabama.
June 7, 1938.

Rehearing Denied Oct. 4, 1938.

F. D. McArthur, of Birmingham, for appellant.

BRICKEN, Presiding Judge.

The indictment upon which this appellant was tried and convicted reads as follows:

"Indictment

"The State of Alabama, Jefferson County, Circuit Court of Tenth Judicial Circuit
"July Term, 1933

"The Grand Jury of said county charge that, before the finding of this indictment, R. J. Barnett, whose Christian name is to the Grand Jury otherwise unknown, unlawfully, and with malice aforethought, killed Elizabeth Alverson by driving an automobile over upon or against her, against the peace and dignity of the State of Alabama."

As will be noted, the foregoing indictment charged the defendant with murder in the first degree, a capital felony.

The record shows that, over the protest, objection and exception of the defendant, the court forced him to go to trial without having complied with the mandatory provisions of Section 8644, Code 1923, which section reads as follows:

"Whenever any person or persons stand indicted for a capital felony, the court must, on the first day of the term, or as soon as practicable thereafter, make an order commanding the sheriff to summon not less than fifty nor more than one hundred persons, including those drawn on the regular juries for the week set for the trial of the case, and shall then in open court draw from the jury box the number of names required, with the regular jurors drawn for the week, set for the trial, to make the number named in the order, and shall cause an order to be issued to the sheriff to summon all persons therein named

A. A. Carmichael, Atty. Gen., Effie Crittenden, Asst. Atty. Gen., and Geo. Lewis Bailes, Sol., and J. Edward Thornton, Deputy Sol., both of Birmingham, for the State.

to appear in court on the day set for the trial of the defendant, and must cause a list of the names of all the jurors drawn for the week in which the trial is set, and those drawn as provided in this section, together with a copy of the indictment, to be forthwith served on the defendant, by the sheriff."

It affirmatively appears from the record that the trial court not only failed, but refused, to do the things required by said section, and entered no order as therein required, but forced the defendant to trial without a special venire, etc., and that the case was tried by a jury selected from the regular venire in attendance upon the court.

As stated, the indictment charged this defendant with a capital felony, hence the action of the court complained of in this connection was error to a reversal. There are innumerable decisions of the appellate courts of this State to this effect. The fact, if it be a fact, that the defendant was tried before upon this indictment, which trial resulted in his conviction of a lower offense comprehended and included therein, did not relieve the court of the necessity of entering the orders prescribed and designated in the Code section, supra, as no order or judgment of the court had been entered in this case showing such fact, and no plea of autre fois acquit had been interposed by the defendant, and the defendant had taken no steps to avail himself of this right, which the law conferred upon him. The oral statement of the court, shown by the record, in this connection will not suffice, and any such oral statement cannot be substituted for the mandatory requirements and provisions of the statute.

In the case of Burton v. State, 115 Ala. 1, 22 So. 585, Chief Justice Brickell for the Court said (page 587):

"This indictment is in the form prescribed by the Code, and avers all the elements and constituents of murder in the first degree, which may be punished capitally,—by death, or by imprisonment in the penitentiary for life. The defendant having pleaded not guilty, the primary duty of the court—a duty to be performed in the personal presence of the defendant—was the setting a day for the trial of the cause; and the day having been set, at least one entire day prior thereto, the drawing of special jurors, not less than 25 nor more than 50, as the court deemed necessary, to be summoned by the sheriff, under the order

of the court, and added to the panel of petit jurors organized for the week; the two constituting the 'venire' as it is termed in the statute, from which the jury for the trial were to be selected. Cr. Code 1886, p. 134, note, § 10. A judgment of conviction on an indictment for an offense which may be punished capitally, cannot be supported, when drawn in question on error, unless it is shown affirmatively by the record that there was by the court performance of these duties. Spicer v. State, 69 Ala. 159; Sylvester v. State, 71 Ala. 17; Posey v. State, 73 Ala. 490; Jordan v. State, 81 Ala. 20, 1 So. 577; Washington v. State, 81 Ala. 35, 1 So. 18; Watkins v. State, 89 Ala. 82, 8 So. 134. The present record does not affirmatively show that a day was set for the trial of the cause, nor that there was the drawing of the special jurors for the trial, as the statute requires. It appears, rather, from the record, that there was not observance of the statute in either respect.

"If it were permissible to look to the record of this case when here at a former term (Burton v. State, 107 Ala. 108, 18 So. 284), it would appear that there had been a trial on which there was a conviction of murder in the second degree, operating an acquittal of murder in the first degree, if the acquittal had been pleaded specially by the defendant, withdrawing the case from the operation of the statutes in regulation of trials for offenses subject to capital punishment. Jordan v. State, supra. But we cannot supplement the deficiency of records by referring to the records of the former terms of this court, though it may be a record in the particular case. And, if the record was looked to, the error of the court would not be cured. The acquittal of murder in the first degree, under the practice established in De Arman v. State, 77 Ala. 10, emphasized by the rule of practice promulgated by this court December 13, 1887 (82 Ala. viii), requires the acquittal to be pleaded specially, to avoid a conviction of that offense. The record does not disclose the filing of the plea, and, as the case is presented, there was not the observance of the mandatory requirements of the statute. The failure to observe them is an error necessitating a reversal of the judgment of conviction."

In Linnehan v. State, 116 Ala. 471, 22 So. 662, the court said (page 664):

"The record in this case does not show that the defendant had been once tried on

this indictment, and convicted of murder in the second degree. The court did not set a day for the trial of the cause, and order the number of jurors prescribed by the statute for the trial, and have a list of them and ·copy of the indictment served on the defendant, in the manner prescribed for the trial of capital cases. Section 10 of the jury law (Cr.Code 1886, p. 134). Nor does it appear of record, that the defendant pleaded specially, that he had been acquitted on a former trial of murder in the first degree, in order to avoid a conviction of that offense, as required in· such cases by rule 31, 82 Ala. viii. That rule makes it the duty of the court to require the defendant, in a case for it, 'to announce his election to file or waive his plea of former acquittal.' His election to file this plea or to waive it, should appear of record. If he file it, its truth may be confessed by the solicitor, in which case, no order for a special jury to try him shall be made. None of the prerequisites for a failure to set a day for the trial of this cause as for a capital offense, and the summoning of a special·venire for the trial, appear in the transcript of the record; and as for anything there appearing, the defendant was tried for an offense which might have been punished capitally, without observing the mandatory requirements of the statute for such a trial. This was erroneous. ·Burton v. State [115 Ala. 1], 22 So. 585. The error was not cured, by what occurred afterwards in the course of the trial, appearing alone from the bill of exceptions, as to the statement of the solicitor, that he would elect to prosecute the defendant for murder in the second degree."

See, also, the case of Ex parte Williams, In re Williams v. State, 213 Ala. 121, 122, 104 So. 282.

Numerous other decisions could be cited, but the foregoing authorities are conclusive of the question, and we deem it unnecessary to prolong the opinion by further citations.

Other insistences of error are presented, but as this case must be reversed we refrain from further discussion, except to say that the evidence adduced upon the trial of this case is in its entirety circumstantial, and as a whole very vague and uncertain. While not passing upon the question of the sufficiency of the evidence to make a jury question we do assert, as stated in the .case of Lay v. State, 26 Ala.App. 458, 162 So. 319, "The deeply deplorable and tragic accident, its heart-rending results,

of itself, cannot be made the basis or premise from which the acts of the accused should be determined or his guilt adjudged. That must be ascertained and determined · solely from the evidence upon the trial as to the occurrence complained of." ·

Reversed and remanded.

RICE, Judge (dissenting).

Of course I agree that the law is as cited and set forth in the majority opinion. There is no question but that the trial court erred in the particular pointed out therein.

·But it is so clear to me that appellant suffered no injury by the said erroneous action of the court, that I am forced to dissent from the reversal of the judgment of conviction therefor.

In the first place, I am of the opinion,— and this court has held, at least once—that the fact that appellant was convicted of the offense of manslaughter in the second degree operated to cure, or obviate any harmful effects of, the said error. See Carr v. State, 23 Ala.App. 584, 129 So. 484.

But aside from the above, the fact .that the learned trial court charged the jury trying the case, specifically, as follows:

"Gentlemen of the Jury, as I explained to you at the outset of this case, this ,defendant R. J. Barnett is charged by an indictment of the grand jury 'unlawfully and with malice aforethought killed Elizabeth Alverson by driving an automobile over or against her.' As I told you, that indictment charges the highest degree of unlawful homicide. The four degrees of unlawful homicide in Alabama are murder in the first degree, murder in the second degree, manslaughter in the first degree and ,manslaughter in the second degree, so the other three degrees of homicide are carried in that indictment. Although they are not written in there the law says it carries all three lower degrees of homicide. Now, under the law which this court is bound by (in) this case is submitted to you on the charge of manslaughter in the second degree, which I will explain to you later.

"In answer to that indictment of the grand jury which the defendant is being tried on he says he is not guilty of any of the things or matters charged in that count of the indictment of manslaughter in the second degree;"

And as follows:

"Now, gentlemen of the jury, we come down to the proposition of the penalty as

298

provided for manslaughter in the second degree as provided under the statute. If you are convinced beyond a reasonable doubt and to a moral certainty that this defendant is guilty the form of your verdict would be: 'We, the jury, find the defendant guilty of manslaughter in the second degree— and, and you may fix his punishment at not more than twelve months hard labor for the county and not less than ten days, or in the event you should not want to give him hard labor you can say so many months, weeks or days in the county jail, and, in addition to either of these punishments should you see fit you may impose a fine not to exceed Five hundred dollars. It may be any amount less than that. In the event you are not convinced beyond a reasonable doubt and to a moral certainty that he is guilty of manslaughter in the second degree, as I have defined to you, under the evidence in this case, it would be your duty to acquit him, and in that event the form of your verdict would be 'We, the jury, find the defendant not guilty, and in either event one of your number will sign as foreman;"

And that he told defendant's (appellant's) counsel, in open court, upon overruling said counsel's objection to going to trial without a special venire, that "the Court of Appeals and the Supreme Court had passed upon the questions involved in this case and under the testimony had eliminated everything except manslaughter in the second degree to which he would confine the State in its prosecution," seems to me to make it doubly clear that appellant suffered no injury by the action of the court made the basis, by the majority, of the reversal of the judgment of conviction. See Blair v. State, 22 Ala.App. 24, 113 So. 414, and, especially, the opinion of the Supreme Court in denying the petition for writ of certiorari in same, 216 Ala. 463, 113 So. 414.

· On Rehearing.

BRICKEN, Presiding Judge.

■ The application for rehearing, by the State, is based upon an Act of the legislature, approved September 13, 1935, Acts 1935, p. 1010. This Act was not called to the attention of this court by brief of either party, nor was there mention made of it upon the trial of this case in the court below.

We find upon examination, the act in question, so far as relates to Jefferson County only, does make a material change in the manner of selection and impaneling juries in criminal cases, and in capital cases. The act deals only upon these questions, and none other. The act appears to have been hurriedly and crudely drawn, and in so far as it deals with the selecting and impaneling juries in capital cases, it is conflicting and contradictory. The latter part of section 2 of said Act provides: "except that in capital cases the list of competent jurors shall contain *thirty* names." Whereas, section 7 of this same act reads as follows: "No special venire shall be ordered or drawn for the trial or trials of a defendant or defendants in capital felonies, and a defendant or defendants in capital felony cases shall only be entitled to strike from a list of *twenty-four* competent jurors obtained from the regular juries in such courts."

The record fails to show a compliance with the provision of this Act in any manner, and under the authorities cited and quoted from in the original opinion this should affirmatively appear.

■ The Act, supra, nowhere repeals or attempts to repeal, that part of Section 8644 of the Code 1923, which requires a copy of the indictment to be served on the defendant, and that this has been done must affirmatively appear in the record, but as hereinabove stated it does not so appear. Carmichael v. State, 213 Ala. 264, 104 So. 638. Constitution 1901, Section 6.

■ Neither does said Act repeal Section 8650 of the Code which says: "The court may, on any day of the session, fix the time for the trial of any capital case or cases for any subsequent day of the session."

It must appear from the record that the defendant was personally in court when the day for his trial was fixed. Lomineck v. State, Ala.Sup., 39 So. 676.

■ The record must show affirmatively the order fixing the time of the trial. Spicer v. State, 69 Ala. 159.

In each and all of these respects the record fails although this defendant went on trial on an indictment charging him with the offense of murder in the first degree. Ex parte Williams, and Williams v. State, 213 Ala. 121, 104 So. 282.

■ On the questions under discussion we adhere to the original opinion, with the exception of the selection and impaneling of the jury, as to that question said opinion is

modified and corrected to conform to the provisions of the special act, supra, which, as stated, was not called to the attention of this court. Acts 1935, p. 1010.

As stated in the original opinion, numerous "other insistences of error are presented." In said opinion we dealt only with the one question, as being conclusive of the appeal. However, the appellant, as he has the right to do, urges this court to consider other questions presented in this case on appeal and upon which he relies for a reversal.

The jury convicted the defendant of manslaughter in the second degree.

The appellant insists there was no sufficient legal evidence in this case to sustain or support said verdict, and raised that question upon the trial in every conceivable manner. The adverse rulings of the court in this connection are made the principal grounds for a reversal of the judgment of conviction from which this appeal was taken.

We have attentively read and given careful consideration to all of the evidence adduced upon this trial. This evidence discloses without dispute that the deceased was killed about 6 o'clock P. M. on September 28, 1933, by being struck by an automobile at the intersection of 61st Street with First Avenue in Birmingham, Alabama. No one testified to having seen the actual collision of the automobile with the body of deceased.

Two paramount questions of fact are involved in this case: (1) Was this appellant, defendant below, the driver of the automobile which struck deceased and caused her death? (2) If so, was he, at the time, driving the automobile in such manner as would amount to gross negligence or gross carelessness as to create a crime under the laws of this State?

In our original opinion, supra, we stated, "the evidence * * * of this case is in its entirety circumstantial, and as a whole very vague and uncertain." We are of the opinion that statement is applicable to both paramount questions (1) and (2) above enumerated. The testimony as to the first proposition was confined principally to the comparison of two short pieces of hair alleged to have been found on or near the hood of the automobile belonging to defendant, with certain hairs taken from the head of deceased by an officer who testified for the State. This witness testified that the two hairs were found on defendant's car on Saturday after the Thursday night of the accident, and also stated, the car had been recently washed, or wiped clean all over. He stated the hairs were delivered to a certain named professor of a Birmingham College for examination. Said professor was examined as a State witness and, among other things, stated that he specialized in biological science. That human hair is a part of that science, and that he had had experience in examining human hair over a long period of time of about 15 or 18 years. But admitted he had never before had experience in examining human hair for evidence in court. Also, that he received from the officers two tubes containing hair, one of the tubes contained two hairs, and the other several. That he made a test and compared the two hairs with those contained in the other tube, that the two hairs in the tube did not compare favorably, but that one of them did compare with the hairs in the other tube. He also stated, "I made no comparison of those hairs for color." In this connection he also stated, "The color of the hair was dark; not one of the first group, one was lighter which did not compare with the others. I did not make a detailed comparison to determine the color." And on redirect examination, he stated: "What I do is a comparison of the minute structures of the hair. The structures as they appear in magnifying hairs in pictures or structures as they appear under the magnifications of the microscope. It looks like little lines and cells. * * * I wasn't interested in the color in this examination. * * * I only had one small short piece of hair to make the comparison with those brought me in the third test tube."

There was some other evidence; even of less weight than the foregoing, upon which the State relied to establish the fact that this appellant was the driver of the car at the time the deplorable tragedy occurred. It is manifest, and we so hold, that the testimony in this connection hardly afforded a scintilla of evidence to establish the first paramount question, supra. The trial court should have so held, and in refusing to do so fell into error. The numerous exceptions reserved in connection with this point of decision were well taken and are sustained.

As to the question (2) supra, there was no evidence adduced to sustain this proposition. None to show that the driver of

the car was guilty in any manner of gross negligence or gross carelessness, nor was there any testimony tending to show that the driver of the car in question was at the time committing an unlawful act, under the laws of this State.

In our case of French v. State, ante, p. 147, 180 So. 592, this court said [page 594]:

"It has been repeatedly held and determined that criminal negligence may not be predicated upon mere negligence or carelessness, but only upon that degree of negligence or carelessness which is denominated 'gross,' and which constitutes such a departure from what would be the conduct of an ordinarily careful and prudent man under the same circumstances as to furnish evidence of that indifference to consequences which in some offenses takes the place of criminal intent. In the case of Hampton v. State, 45 Ala. 82, the court said: 'There must be a criminal intent, or negligence so gross as to imply it.' In White v. State, 84 Ala. 421, 423, 4 So. 598, is this language: 'Gross carelessness, even in the performance of lawful acts, is punishable, if another is injured thereby.'

"In Fitzgerald v. State, 112 Ala. 34, 20 So. 966 it was said: 'But if the killing was the result of carelessness of such low degree or trivial character as to have been purely an accident, there is no criminality in the homicide, and the person inflicting the fatal blow is not criminally responsible.'

"In 29 Corpus Juris, p. 1154, it is said: 'While the kind of negligence required to impose criminal liability has been described in different terms, it is uniformly held that it must be of higher degree than is required to establish negligence upon a mere civil issue, and it must be shown that a homicide was not improbable under the facts as they existed which should reasonably have influenced the conduct of accused.'

"There can, we therefore think, be no doubt upon authority and principle that homicide may result from carelessness of such low degree or trivial character in the performance of a lawful act as not to involve criminality in the person so carelessly performing the act; and it follows that criminality cannot be affirmed of every lawful act, carelessly performed, and resulting because of such carelessness in the death of another. The carelessness must be aggravated, so to speak; it must be gross, implying an indifference to consequences."

The unfortunate death of the deceased in this case was deplorable in the extreme and naturally caused untold grief and sorrow to her loved ones and friends. But, as stated, in our case of Lay v. State, 26 Ala.App. 458, 162 So. 319: "The deeply deplorable and tragic accident, its heart-rending results, of itself, cannot be made the basis or premise from which the acts of the accused should be determined or his guilt adjudged. That must be ascertained and determined solely from the evidence upon the trial as to the occurrence complained of."

In our McBride Case, McBride v. State, 20 Ala.App. 434, 102 So. 728, 729, the following statement made by the court is peculiarly applicable to the case at bar, to-wit: "The question then arises who was the person driving the car. The party must be indentified by evidence before a conviction can be had. Mere suspicion will not suffice. We have searched this record diligently for evidence that would tend to connect the defendant with the commission of this crime. Such evidence is not in the record, and this defendant was entitled to the general affirmative charge."

See, also, Copeland v. State, 23 Ala.App. 91, 121 So. 445, where the court said:

"Circumstantial evidence to be sufficient to justify a jury in convicting upon it, the circumstances proved must not only be consistent with the hypothesis that the accused is guilty, but inconsistent with the hypothesis that he is innocent, and inconsistent with every other rational hypothesis except that of his guilt.

"Moreover, as stated, for circumstantial evidence to be sufficient to justify the court in submitting the case to the jury, it must be of such a character as to overcome the presumption of innocence which is evidentiary in its nature, and which attends the accused when upon trial charged with the commission of a criminal offense."

In Inge v. State, ante, p. 38, 178 So. 453, Rice, J. for the court said:

"It may be, and doubtless is, true that it creates a 'suspicion' against appellant. But that is not enough.

"It is clear to us that 'admitting all it tends to prove, defendant's (appellant's) guilt is left in uncertainty, or depends upon conjecture or probabilities.' In such a case it is the duty of the court to instruct the jury (upon proper request) to acquit the

defendant. Copeland v. State, 23 Ala.App. 91, 121 So. 445.

"As some one has said: 'When the law is respected, when the Constitution is maintained, though crime may sometimes go unpunished, at least innocence is secure.'"

█ In furtherance of what has been said, hereinabove, and as being particularly applicable to the case at bar, we quote from the opinion of the Supreme Court in the case of Cooper v. State, 235 Ala. 523, 180 So. 102, wherein the court stated:

" 'The humane provisions of the law are, that a prisoner, charged with a felony, should not be convicted on circumstantial evidence, unless it shows by a full measure of proof that the defendant is guilty. Such proof is always insufficient, unless it excludes, to a moral certainty, every other reasonable hypothesis, but that of the guilt of the accused. No matter how strong the circumstances, if they can be reconciled with the theory that some other person may have done the act, then the defendant is not shown to be guilty, by that full measure of proof which the law requires.' Ex parte Acree, 63 Ala. 234.

"This statement of the law, often repeated in substance, is expressive of the deep solicitude of the law that the guilty, and the guilty alone, shall be punished for crime.

"These considerations are particularly applicable to this case. Here was an atrocious crime. The vital issue is the identity of the perpetrator.

"The evidence is circumstantial. The court has read it in consultation. Indulging the strong presumption to be accorded the verdict, we are clearly convinced the motion for a new trial should have been granted upon the ground that the proof is not of that conclusive character demanded by the law."

█ Innumerable decisions of the appellate courts of this State are of like import, but we deem further citation of authorities unnecessary, and will close this opinion after adverting to but one other question which relates to the exception reserved to improper argument of the assistant Solicitor to the jury. The record shows, the defendant objected to and moved the exclusion of the remarks wherein the assistant solicitor stated: "Mr. Stuart was in the office of the Solicitor at the time of this accident and it was through his untiring efforts that this case was run down." Also: "After Mr. Stuart left the Solicitor's office he agreed to come back and assist in the trial of this case." Such argument had no place in the trial of this case. In the first place there was no evidence (nor could there have been) to sustain the remarks complained of, and that such remarks may have been hurtful and prejudicial is clearly manifest. It may readily be ascertained and concluded from this record that Mr. Stuart is an active and aggressive attorney, and a very vigorous prosecutor, and in a different forum the laudatory remarks and encomium very probably would have been in point, but certainly it cannot be insisted that his activities in connection with running down this case, and his opinion that the accused was guilty of the crime charged, could be argued to the jury in order to sway their judgment upon the all important question as to the guilt or innocence of the accused. In the discharge of this sacred duty the jury can look only to, and consider, the evidence adduced upon the trial. It may have been possible too that so good and prominent a gentleman might have had upon the jury some warm admirer, or close friend, whose judgment in the consideration of the case might have been swayed by the unauthorized statement. Without further discussion of this point we hold that the exceptions reserved by the defendant were well taken and are sustained.

For the additional reasons hereinabove stated we adhere to the former conclusion rendered. The opinion is modified and extended. The judgment of conviction from which this appeal was taken is reversed and remanded for further action in this case by the trial court consistent with what has been said.

Opinion modified and extended. Application for rehearing by the State is overruled.

Application overruled.

RICE, J., dissents.