(*Circuit Court of Coles County.*)

## The People of the State of Illinois

### vs.

### Edgar A. Potter and Fred More
(No. 3760, Criminal carelessness; No. 3761, Manslaughter.)

### Same

### vs.

Edgar A. Potter, Francis S. Peabody, Arthur W. Under-wood, Marshall Sampsell, Peter S. Grosscup and Fred More. (No. 3762, Manslaughter; No. 3763, Criminal carelessness.)[1]

### Same

### vs.

### Charles Botts
(No. 3764. Manslaughter.)

### Same

### vs.

### Ben McClara
(No. 3765. Manslaughter.)

(February 28, 1908.)

1. CRIMINAL CARELESSNESS WHILE IN CHARGE OR CONTROL OF PUBLIC CONVEYANCE—LIABILITY OF OFFICERS AND DIRECTORS OF RAIL-ROAD. Section 49 of the criminal code which makes it an offense for any person having personal management or control of or over any public conveyance used for the common carriage of passengers, to be guilty of gross carelessness or neglect in or in relation to the conduct, management or control of such public conveyance, while being used for the common carriage of passengers, whereby the safety of any person shall be endangered, has no application to persons having the management or control of the *business* of a railroad, such as the officers and directors.
   (See note 1, p. 412.)

[1] Indictments Nos. 3700, 3710, 3713, 3714, 3741, 3742 and 3743 were nollied on account of the pendency of the second series of indictments.—Ed.

2. Indictment—Misjoinder—Charging Different Defendants in Separate Counts. An indictment against a number of defendants cannot charge part of the defendants in one count and part of them in other counts. Therefore, an indictment which charges the directors of a corporation in some counts and the officers in other counts must be quashed.

   (See note 2, p. 413.)

3. Indictment—Misjoinder of Defendants in Indictment for Neglect of Duty, Not Joint. In indictments for manslaughter and criminal carelessness arising out of an alleged neglect of duty, it is erroneous to join the defendants upon whom the obligation to perform the alleged duty rests, unless it is shown by a proper and specific averment of fact that such duty rested on all of the defendants alike. Where the board of directors of a corporation were indicted jointly with the officers and the superintendent of a railroad for negligence in the operation of the road, whereby a collision occurred resulting in the death of a passenger, it was held that as no joint duty was alleged that the misjoinder was fatal.

   (See note 3, p. 414.)

4. Directors of Corporations—Criminal Liability of for Neglect of Duty. The directors of a railroad corporation may be criminally liable in certain cases of neglect of duty. But they cannot be held criminally liable jointly with the superintendent or general manager of such road who negligently or wilfully give orders which result in a wreck, or with the motor man who negligently or wilfully runs one car into another, either in obedience to or in direct violation of those orders.

   (See note 4, p. 415.)

5. Indictment—Duplicity in—Each Count Must Contain Single Issue. An indictment should be certain and specific as to the defendants, the offense, and the manner of its commission, so that the plea of "not guilty" will raise a single issue upon each count. If more than one issue is raised upon any count by that plea, the count is duplicitous.

6. Indictment—Duplicity in—What Constitutes. A count of an indictment for manslaughter against the directors and officers of a railroad which alleges that a death was caused in the operation of the railroad by a failure to provide safe, proper and sufficient rules for the operation and running of cars and also charges that the death was caused by the establishment and enforcement of unsafe, improper and insufficient rules and regulations, is bad for duplicity.

7. Indictment—Allegations of, as to Duty. An indictment based on a neglect to perform a particular duty should allege the

existence of facts from which the law raises the duty, and it is not sufficient to allege that it was the duty to do the things in question.

8. INDICTMENT—BASED ON FAILURE TO ESTABLISH PROPER AND SUFFICIENT RULES FOR OPERATION OF RAILROAD—MUST SET OUT RULES. Where an indictment charges manslaughter on account of a death in a railroad collision, alleged to have been occasioned by providing and enforcing improper, insufficient and unsafe rules, the indictment must allege what rules were violated and the rules must be set out in the indictment.

9. PROXIMATE CAUSE—CAUSAL CONNECTION BETWEEN ACT AND DEATH. Where it is alleged in an indictment for manslaughter that a collision was occasioned by neglect to provide and enforce safe and sufficient rules and by the enforcement of unsafe and insufficient rules, whereby death was caused, the allegations of the indictment must show a causal connection between the act and the death.

10. DIRECTORS—CRIMINAL LIABILITY OF WHERE NO CIVIL LIABILITY. Directors of a corporation cannot be held criminally liable for negligence in a case where they could not be held civilly liable. The person or persons directly responsible for a death are criminally liable.

(See note 6, p. 422.)

11. CRIMINAL LAW—PRINCIPAL OR MASTER NOT CRIMINALLY RESPONSIBLE FOR NEGLIGENCE OF AGENT OR SERVANT. A principal or master is not responsible criminally for the negligent acts of his agents or servants.

(See note 5, p. 420.)

12. GRAND JURY—VALIDITY OF WHERE IMPROPERLY SERVED. The fact that the sheriff serves a number of the grand jurors by mailing a copy of the venire with a return card to himself in which the grand juror acknowledged service, will not invalidate the proceedings of such grand jury where all the jurors were present even though such service was not in accord with the statute.

13. SAME—FAILURE TO CERTIFY SELECTION OF JURORS WITHIN FIVE DAYS. The failure of the county clerk to certify the names of the grand jurors to the clerk of the court within five days after their selection, as required by the statute, does not invalidate the proceedings of such grand jury, as the provision of the statute is directory only.

14. GRAND JURY—NECESSITY OF HEARING EVIDENCE ON FINDING OF SECOND INDICTMENT. Where the grand jury hears evidence in support of an indictment, and thereafter at the request of the prosecutor finds a second indictment against the same

person for the same offense, it is not necessary for such grand jury to hear evidence in support of the second indictment.
(See note 7, p. 424.)

15. GRAND JURY—WITNESS NOT SWORN BY FOREMAN—EFFECT OF. Although the statute contemplates that the foreman should swear all witnesses, a failure to do so in the case of a particular witness, will not invalidate the indictment if there is other sufficient evidence.

16. INDICTMENTS—PRESENCE OF STATE'S ATTORNEY IN GRAND JURY ROOM. The state's attorney is not authorized to be in the grand jury room during the deliberations of the grand jury. But the state's attorney may properly be with the grand jury and advise and counsel with them as to their duties, so long as he does not prevail upon the grand jury to return an indictment which they would otherwise not have done.

17. GRAND JURY—EFFECT OF RECONVENING AFTER ADJOURNMENT WITHOUT ENTRY OF RECONVENING ORDER—VALIDITY OF INDICTMENTS. Where a grand jury adjourns for the term sine die, and thereafter reconvenes during the same term without the entry by the court of a reconvening order, and returns indictments, such indictments must be quashed as the grand jury was without authority to act.

18. SAME—POWER OF COURT TO RECALL GRAND JURY AFTER ADJOURNMENT. The court has no power to reassemble the grand jury after it has adjourned for the term, except under the provisions of the statute which provides for a special venire.

Motion to quash indictments for manslaughter and criminal carelessness. Heard before Judge Morton W. Thompson.

*John McNutt,* state's attorney, for the people.

*Levy Mayer,* Chicago, Ill., *W. S. Graham,* Springfield, Ill. *John H. Marshall,* Charleston, Ill., and *Messrs. Andrews & Vause,* Mattoon, Ill., for defendants Potter, Peabody, Underwood, Sampsel, Grosscup and More.

*Messrs. Andrews & Vause,* for defendant Botts.

*Albert C. Anderson* and *Charles C. Lee,* Charleston, Ill., and *Edward C. Craig,* Mattoon, Ill., for defendant McClara.

## STATEMENT OF FACTS.

The defendants, Edgar A. Potter, Francis S. Peabody, Arthur W. Underwood, Marshall Sampsell, and Peter S. Grosscup, were the directors of the Mattoon City Railway Com-

pany which operated an interurban line of railway between the cities of Mattoon and Charleston, Illinois. The defendant Edgar A. Potter, was the president and general manager of the company, and the defendant Fred More, the general superintendent. The defendants Charles Botts and Ben McClara, were motormen in the employ of the company. On August 30, 1907, a collision occurred between a freight motor car and a passenger motor car which were proceeding in opposite directions on a single track, whereby sixteen persons were killed, and a large number injured.

On September 11, 1907 the boad of supervisors of Coles county selected twenty-three persons to serve as grand jurors for the county of Coles at the October, 1907, term of the circuit court, and the county clerk was directed to certify the names of the persons selected to the clerk of the circuit court, pursuant to the statute. The clerk did so certify on September 18, 1907. The clerk of the circuit court thereupon issued a venire for the said grand jurors and placed the same in the hands of the sheriff. The sheriff served several of the grand jurors in person but the service on a number of such grand jurors was had by depositing in the mail an envelope properly addressed to said persons, postage prepaid, containing a copy of the summons and a return postal card addressed to the sheriff and upon which the recipient was directed to acknowledge receipt of the summons. All of said cards were signed and returned to the sheriff.

On October 14, 1907, the grand jurors appeared in the court house at Charleston and were duly impanelled as the grand jury and thereafter retired to their room and after hearing evidence, returned six indictments against the defendants for manslaughter and criminal carelessness.

On October 30, 1907, the said grand jury reported to the court that they had no further business and the court thereupon ordered said grand jury to take an indefinite recess and instructed them that if the court should require their further service they would be notified.

On December 9, 1907, the sheriff mailed to each member

of said grand jury a postal card upon which appeared the following:

"By order of the judge of the circuit court, the grand jury will reconvene on Monday, January 6, 1908, at 1 p. m.

"E. H. Slover, Sheriff."

No order was entered of record by the court reconvening said grand jury.

On January 6, 1908, the said grand jury assembled. It was charged that the state's attorney thereupon appeared before said grand jury and went with them into the grand jury room and told such grand jurors that he feared that the indictments found in October were not good and that therefore he had drawn new indictments, and that he wanted them to adopt the new indictments and vote on the same; that said indictments were already prepared and said state's attorney presented the same to the grand jurors and requested them to adopt the same and said state's attorney remained in the grand jury room until the said grand jurors did vote upon the said indictments. The grand jury thereupon returned six additional indictments against the defendants. Upon the hearing of the motions to quash, the defendants moved to quash the first series of indictments on account of the pendency of the second series. The state's attorney thereupon nollied the first series of indictments and the motions to quash the second series were thereupon argued.

Indictment No. 3762 for manslaughter contained twenty-two counts. Count one alleged:

That on the thirtieth day of August, in the year of our Lord one thousand nine hundred and seven, Edgar A. Potter, Francis S. Peabody, Arthur W. Underwood, Marshall Sampsell and Peter S. Grosscup, were and then and there had assumed the offices and duties of directors of the Mattoon City Railway Company, and then and there composed and had assumed the duties of the board of directors of said company, a corporation organized and doing business under the laws of the state of Illinois, and the said Edgar A. Potter, was and then and there had assumed the office and duties

of president of said Mattoon City Railway Company, and
Fred More was, and then and there had assumed the office
and duties of superintendent of said railway company that
on the day aforesaid the said Mattoon City Railway Com-
pany owned and was then and there operating a single track
railroad in and between the cities of Mattoon and Charleston
in said county and state, and was transacting a railroad busi-
ness of carrying passengers and freight for hire and was then
and there operating and running a system of electric passen-
ger and freight motor cars upon said single track railroad
for the carrying of said passengers and freight; that on the
day aforesaid and in the county and state aforesaid the said
Edgar A. Potter, Francis S. Peabody, Arthur W. Underwood,
Marshall Sampsell, Peter S. Grosscup and Fred More then
and there composing the board of directors and superintend-
ent as aforesaid of said company, had then and there taken
on themselves the management, control and supervision of
said railroad and the operation and conduct of the said pas-
senger and freight motor cars of said company on said rail-
road, and it was then and there the duty of the said Edgar
A. Potter, Francis S. Peabody, Arthur W. Underwood, Mar-
shall Sampsell, Peter S. Grosscup and Fred More, as the
board of directors and superintendent as aforesaid, to then
and there provide and establish with due care and circum-
spection for the guidance of the employees of said company
and for the protection of the lives and safety of the passen-
gers then and there carried upon the aforesaid passenger
cars, proper and sufficient rules and regulations relating to
the safe and efficient operation of the said passenger and
freight motor cars upon said single track railroad so that
the lives and safety of the passengers carried upon said
passenger motor cars would be secured, and then and there
take care and see to it that such rules and regulations as
aforesaid were then and there provided, established and en-
forced in the operation and running of the aforesaid cars on
said railroad, yet, not regarding their duty in that behalf
and without due care and circumspection for the lives and

safety of the passengers then and there being carried on the aforesaid passenger motor cars the said Edgar A. Potter, Francis S. Peabody, Arthur W. Underwood, Marshall Sampsell, Peter S. Grosscup and Fred More, as the board of directors and superintendent as aforesaid, did then and there feloniously and *wilfully*, fail, neglect and omit to provide and establish, and to take care and see to it that said company and railroad were then and there provided with proper sufficient, and safe rules and regulations for the guidance of the employees of said company in and about the operation and running of the passenger and freight motor cars of said company on said railroad as aforesaid so that the safety and lives of the passengers then and there being carried on the said passenger motor cars would be secured, and did then and there feloniously, wilfully and negligently and without due caution and circumspection, provide and establish and enforce unsafe, improper and insufficient rules and regulations for the guidance of the employees of said company and for the preservation of the lives and safety of the passengers then and there being carried upon said passenger motor cars, by reason whereof, and the aforesaid felonious and wilful neglect and omission of the said Edgar A. Potter, Francis S. Peabody, Arthur W. Underwood, Marshall Sampsell, Peter S. Grosscup and Fred More, a passenger motor car of said company and a freight motor car of said company being then and there propelled by electricity in opposite directions and toward each other and at a high rate of speed along and upon said single track railroad on the day aforesaid, and in the county and state aforesaid came into violent contact and collision and said cars were then and there mashed, crushed and driven together and upon and into each other, and by means thereof mortal wounds were then and there inflicted upon and in the head and body of William Nelson, who was then and there a passenger on the aforesaid passenger motor car of said company, of which said mortal wounds the said William Nelson then and there instantly died. And so the grand jurors aforesaid do say that the said Edgar A. Pot-

ter, Francis S. Peabody, Arthur W. Underwood, Marshall Sampsell, Peter S. Grosscup and Fred More, did feloniously and willfuly the said William Nelson then and there kill and slay, contrary to the form of the statute in such case made and provided and against the peace and dignity of the said people of the state of Illinois.

Count two was against Potter, Peabody, Underwood, Sampsell and Grosscup as directors and More as superintendent and alleged that it was their duty to provide "a safe railroad, safe cars, safe methods for operating the cars of said company, and to provide with due caution and circumspection safe rules and regulations relating to the operation and movements of the passenger and freight electric motor cars of said company, and for the proper performance by the several servants of said company, of their respective and several duties, whereby the safety and lives of the passengers traveling upon said railroad would be reasonably secured."

Count three was against the same defendants and alleged that it was their duty "with due caution and circumspection to provide and establish for the guidance of the employees of said company, proper and sufficient rules and regulations relating to the said operation of the business and cars of said company upon the said single track railroad whereby the safety and lives of the passengers then and there traveling upon said railroad would be reasonably secured."

Count four was against the same defendants and alleged that it was their duty "with due caution and circumspection, to prepare, provide and establish and to see that said company and railroad was provided with, a system of rules and regulations for the operation and management of the business of said company and the operations and running of the cars of said company upon said railroad, under which system faithful and careful employees of said company could operate the cars of said company on said railroad so that the lives and safety of the passengers upon said cars would be reasonably secured."

Count five was against the same defendants and alleged that

26

it was their duty "with due caution and circumspection to operate, conduct and manage said railroad and the business of said company so as to safely transport all passengers upon the cars of said company to their several destinations."

Count six was against the same defendants except that Potter was charged also as president of the company. It alleged that they "then and there composed the management of said railroad and said company and had then and there taken on themselves the care, control and supervision of the operation of said railroad and the business of said company and the running and management of the passenger and freight motor cars of said company on said railroad, and it was then and there their duty with due caution and circumspection to prepare, provide and establish a system of rules and regulations for the operation and management of' said railroad and the business of said company and the running of said cars upon said railroad under which system faithful and careful employees of said company could operate the passenger and freight cars of said company on said single track railroad so that the lives and safety of the passengers traveling on said railroad would be reasonably secured."

Count seven was against the directors and Potter as president. It alleged that they exercised all the corporate powers of the company and had taken upon themselves the entire control, management and supervision of the business of said railroad and that it was then and there their duty "with due caution and circumspection to prepare, provide and furnish for said company, and to take care and see to it that said company was provided and furnished with a system of rules and regulations for the operation and management of the business and the running of the passenger and freight cars of said company upon said single track railroad under which system, so to be provided and furnished as aforesaid, faithful and careful employees of said company could operate the passenger and freight motor cars of said company upon and along the said single track railroad so that the lives and safety of the passengers carried upon said passenger cars would be reasonably secured."

Count eight was against the directors and alleged that it was their duty ''with due caution and circumspection to provide, select and employ for said company, and to take care and see to it that said company was provided with and had employed such officials and servants as would and could operate, manage and conduct the business of said company and the system of passenger and freight motor cars of said company on said single track railroad with due caution and circumspection for the safety of the passengers carried upon the passenger motor cars of said company.''

Count nine was against the directors and alleged that they ''had taken on themselves the care, management and control of said single track railroad and the duty of with due caution and circumspection in providing for and seeing that said company and railroad were provided with proper rules and competent officials, so that said single track railroad could and would be operated with due care and circumspection for the lives and safety of the passengers carried upon said passenger motor cars of said company on said railroad.''

Count ten was against the directors and alleged that they ''had taken on themselves the care, management and control of said single track railroad and the business of said company and the duty of with due caution and circumspection providing for said company and seeing that said company was provided with proper rules and regulations, so that said single track railroad and said passenger and freight motor cars could and would be operated with due care and circumspection for the lives and safety of the passengers carried upon said passenger motor cars of said company on said railroad and for the prevention of collisions between said passenger and freight motor cars while the same were being used in the transaction of the business of said company.''

Count eleven was against the directors and alleged that they had ''taken on themselves the care, management and control of said single track railroad and the business of said company and the duty of with due caution and circumspection providing for said company and railroad and seeing that

said company and railroad was provided with proper rules and regulations so that said single track railroad and said system of passenger motor cars and said freight motor car could and would be operated on said railroad with due care and circumspection for the lives and safety of the passengers carried on said passenger cars and for the prevention of collisions between said passenger motor cars and said freight motor car while the same was being used in the transaction of the business of said company.''

Count twelve was against the directors and alleged that they had ''taken on themselves the care, management and control of said single track railroad and the business of said company and the duty of with due caution and circumspection providing for said company and railroad and seeing that said company and railroad (were) provided with proper rules and regulations (and competent and efficient officials and employees) so that said single track railroad and said system of passenger motor cars and said freight motor car could and would be operated on said railroad with due care and circumspection for the lives and safety of the passengers carried on said passenger cars and for the prevention of collisions between said passenger motor cars and said freight motor car while the same were being used in the transaction of the business of said company.''

Count thirteen was substantially the same as count twelve except Potter was charged as president and More as superintendent.

Count fourteen was against Potter as president and More as superintendent and alleged that they had ''taken on themselves the care, management and control of said single track railroad and the business of said company and the duty of with due caution and circumspection providing for said company and said railroad and seeing that said company and railroad were provided with proper rules and regulations and competent employees so that said single track railroad and said system of passenger motor cars and said freight motor car could and would be operated on said railroad with

due care and circumspection for the lives and safety of the passengers carried on said passenger cars and for the prevention of collisions between said passenger motor cars and said freight motor car while the same were being used in the transaction of the business of said company.''

Count fifteen was in substance the same as count fourteen.

Count sixteen was against Potter alone and was in substance the same as count fifteen.

Count seventeen was against the directors and alleged that they ''had then and there taken on themselves the management, control and supervision of said railroad and the operation and conduct of the said passenger and freight motor cars of said company on said railroad; and it was then and there the duty of the said * * * as such directors and board of directors as aforesaid thus in charge of and control over the operation of the aforesaid passenger motor car and the aforesaid freight motor car with due caution and circumspection to use and exercise and cause to be used and exercised all proper, reasonable and effective measures and all means within their power to prevent the said passenger motor car and the said freight motor car from colliding and to place the said passenger motor car and the said freight motor car under the government and control of employees properly trained and experienced and competent to run the aforesaid passenger and freight motor cars along the said single track railroad with safety.''

Count eighteen was against the directors and alleged that it was their duty ''with due caution and circumspection to use and exercise and cause to be used and exercised all proper, reasonable and effective rules and measures and all means within their power to prevent the said passenger motor car and the said freight motor car from colliding, and to ascertain and know that the said passenger motor car and the said freight motor car could be operated and run in opposite directions on said single track railroad under the rules and regulations and the officials and employees then and there employed and used in the operating

and managing of said cars on said railroad with due caution and circumspection for the lives and safety of the passengers carried upon said passenger motor car, and to place the operation, dispatching and management of said passenger motor car and said freight motor car under the government and control of some official or employee properly trained, experienced and competent to operate, dispatch and manage the said passenger motor car and the said freight motor car on said railroad with safety.''

Count nineteen was against Potter as president and general manager and alleged that it was his duty ''to use and exercise and cause to be used and exercised all proper, reasonable and effective rules and measures and all means within his power to prevent the said passenger motor car and the said freight motor car from colliding on said railroad and to place the said passenger motor car and the said freight motor car under the government and control of employees properly trained, experienced and competent to run, dispatch and manage the said passenger motor car and the said freight motor car on said railroad with safety to the passengers then and there carried on said passenger motor car and to ascertain and know that the said passenger motor car and the said freight motor car could be operated and run in opposite directions on said railroad under the rules and regulations and the employees then and there employed and used in the operating, dispatching and running of said cars with due caution and circumspection for the lives and safety of the passengers carried upon said passenger motor car.''

Count twenty was against More as superintendent and was in substance the same as count nineteen.

Count twenty-one was against Potter as president and general manager and More as superintendent and alleged that it was their duty ''to ascertain and know that the said passenger motor car and said freight motor car could be operated and run in opposite directions and toward each other and at a high rate of speed on said railroad under the

rules and regulations and the employees then and there em-
ployed and used in the operation and running of said cars,
with due caution and circumspection for the lives and safety
of the passengers then and there carried upon said passen-
ger motor car and to use and exercise and to cause to be used
and exercised all proper, reasonable and effective measures,
rules and regulations and all means within their power to
prevent the said passenger motor car and the said freight
motor car from colliding on said railroad and to place the
said passenger motor car and the said freight motor car
under the government and control of motorneers and conduc-
tors properly trained and experienced and competent to run
said cars in opposite directions along said railroad with due
caution and circumspection for the lives and safety of the
passengers carried on said passenger motor car.''

Count twenty-two was against the directors and alleged
that the company operated its road under a system of ''im-
proper, unsafe, unfit and inefficient rules and regulations
and a president and general manager who was then and there
incompetent, untrained and inexperienced in and about the
management of said railroad and the dispatching and opera-
tion of said cars thereon,'' and that the said directors did
''unlawfully cause, suffer and permit to be and remain estab-
lished and in force and effect as the rules and regulations
and the president and general manager under which said
company was to operate and did operate said railroad and
said cars thereon.''

Indictment No. 3763 for criminal carelessness contained
ten counts. Count one alleged:

That on the thirtieth day of August in the year of our
Lord one thousand nine hundred and seven Edgar A. Potter,
Francis S. Peabody, Arthur W. Underwood, Marshall Samp-
sell and Peter S. Grosscup were then and there and had as-
sumed then and there the offices and duties of directors of
the Mattoon City Railway Company and then and there
composed and had assumed the duties of the board of direc-
tors of said company, a corporation organized and doing

business under the laws of the state of Illinois; and said corporation owned and was then and there operating a single track railroad in said county for the common carriage of passengers and freight for hire by means of a system of passenger motor cars and one freight motor car propelled on said railroad by electricity; and on the day aforesaid and in the said county of Coles and state aforesaid the said Edgar A. Potter, Francis S. Peabody, Arthur W. Underwood, Marshall Sampsell and Peter S. Grosscup as such board of directors had then and there taken on themselves the *personal* management and control of and over said railroad and the operation of said passenger motor cars and said freight motor car and of a certain passenger motor then and there governed and controlled by employees of said corporation on said railroad which said passenger motor car was then and there being operated as aforesaid and was then and there a public conveyance then and there being used for the common carriage of William Nelson and other persons as passengers for hire on said railroad; and it was then and there the duty of the said Edgar A. Potter, Francis S. Peabody, Arthur W. Underwood, Marshall Sampsell and Peter S. Grosscup as such board of directors and having then and there the personal management and control over said public conveyance and said railroad as aforesaid to provide and cause to be provided employees who are competent, trained and experienced in and about the careful and safe dispatching and operation of said public conveyance and said freight motor car upon said railroad so that the safety of the said William Nelson and other persons then and there passengers on said public conveyance would not be unreasonably and unnecessarily endangered, yet, unmindful of their duty in that behalf the said Edgar A. Potter, Francis S. Peabody, Arthur W. Underwood, Marshall Sampsell and Peter S. Grosscup, were then and there guilty of felonious, wilful and gross carelessness and neglect in, and in relation to, the conduct, management and control of said public conveyance while the same was then and there being used for the common carriage

of the said William Nelson and other persons as passengers
as aforesaid, in that they, the said Edgar A. Potter, Francis
S. Peabody, Arthur W. Underwood, Marshall Sampsell and
Peter S. Grosscup as such board of directors as aforesaid did
then and there feloniously, wilfully and with gross careless-
ness provide and caused to be provided an employee for the
operation and dispatching of said public conveyance and
said freight motor car along and upon said railroad which
said employee was untrained, incompetent, and inexperienced
in and about the safe and careful operation and dispatching
of said public conveyance and said freight motor car as
aforesaid; and the incompetency, unfitness and inefficiency
of said employee for the purpose of providing safety to the
said William Nelson and other persons so being passengers
as aforesaid should have been known to the said Edgar A.
Potter, Francis S. Peabody, Arthur W. Underwood, Marshall
Sampsell and Peter S. Grosscup and they might by the exer-
cise of ordinary observation and inquiry have ascertained
the same and should so have ascertained before said public
conveyance and the said freight motor car were operated and
caused to be operated as herein mentioned; and notwithstand-
ing the premises, the said Edgar A. Potter, Francis S. Pea-
body, Arthur W. Underwood, Peter S. Grosscup and Mar-
shall Sampsell were then and there guilty of felonious, wilful
and gross carelessness and neglect in that they feloniously
and wilfully and with gross negligence did then and there
on the day aforesaid and in the county and state aforesaid
the said public conveyance then and there being used for the
common carriage of said William Nelson and other persons
as aforesaid, and the said freight motor car, operate and run
and cause, suffer and permit to be operated and run on said
railroad in opposite directions and toward each other and at
a high rate of speed under the dispatching and direction of
the aforesaid employee who was then and there incompetent,
untrained and inexperienced in and about the careful, safe
and proper manner to so dispatch and operate the said public
conveyance and the said freight motor car in opposite di-

rections and toward each other as aforesaid so that the safety
of the said William Nelson and the other passengers on said
public conveyance would not be then and there unreasonably
and unnecessarily endangered; and by reason thereof the
said public conveyance and the said freight motor car being
then and there operated and dispatched and controlled as
aforesaid did then and there come into violent contact and
collision and were then and there by reason of such collision
mashed, crushed and driven together and upon and into each
other and by reason thereof the said William Nelson was then
and were thrown down and upon the beams, timbers and
iron pieces and other component parts of said public con-
veyance and mortal wounds were then and there inflicted
thereby upon and in the head and body of the said William
Nelson from which said mortal wounds the said William Nel-
son then and there instantly died.  And so the said Edgar
A. Potter, Francis S. Peabody, Arthur W. Underwood, Mar-
shall Sampsell and Peter S. Grosscup were then and there
guilty of felonious, wilful and gross carelessness and neglect
in and in relation to the conduct, management and control
of said public conveyance while the same was being then and
there used for the common carriage of the said William Nel-
son and other persons as aforesaid and by reason thereof and
whereby the safety of the said William Nelson who was then
and there a passenger on said public conveyance was then
and there by the felonious, wilful and gross carelessnees and
neglect of the said Edgar A. Potter, Francis S. Peabody,
Arthur W. Underwood, Marshall Sampsell and Peter S.
Grosscup endangered contrary to the form of the statute in
such case made and provided and against the peace and dig-
nity of the people of the state of Illinois.

The remaining nine counts contained the same variations
with respect to parties, duties, etc., as indictment No. 3762
supra.

It is unnecessary to a correct understanding of the opinion
of the court to refer to the indictments against the other de-
fendants.

THOMPSON, J. :—

I desire now to express my appreciation to the state's attorney and each of the attorneys for the defendants, for the very able and exhaustive arguments made in these cases. I realize the seriousness of this matter, both to the defendants who stand charged with a felony, and to the victims of that unfortunate occurrence, and I am not unmindful of the very bitter feeling engendered throughout this county by it.

The Mattoon City Railway, an Illinois corporation, owns and operates a single track interurban electric railroad, between the cities of Mattoon and Charleston, Illinois, a distance of about eleven miles. On August 30, 1907, an express car going west on a sharp curve, which rounded a high point of land, collided with a passenger car going east, and eighteen people were killed and about as many more injured.

As a matter of common knowledge we all know that accidents of that kind do not occur without the fault of somebody. Some one, or more persons, was to blame for that unfortunate occurrence. One can hardly realize such an occurrence without involuntarily saying, "someone has blundered, someone was negligent, someone was to blame and should be punished."

As said by Blackstone, the principal object of criminal prosecution is not so much to punish the defendant, as to set an example to others, to not violate the law. The state does not ask for vengeance alone. It cannot benefit the state to hang a man for murder, except in so far as it sets an example to others not to kill.

The motion to quash of course challenges the legal sufficiency of the indictments, and each count, and under that motion, numerous reasons are urged against their sufficiency, some of which I shall not take the time to even mention, much less to discuss.

Indictment No. 3762 is against the defendants for "manslaughter," and contains twenty-two counts, some of which include only the directors, others the directors and officers,

and still others the directors, officers and superintendent of said railway company.

Indictment No. 3763 is against the defendants, for "criminal carelessness," and contains ten counts, some of which include only the directors, others the directors and general manager, and still others the general manager and superintendent, and is drawn under section 49, of the criminal code of Illinois, which is as follows:

"Whoever, having personal management or control of or over any steamboat or other public conveyance used for the common carriage of persons, is guilty of gross carelessness or neglect in, or in relation to, the conduct, management or control of such steamboat, or other public conveyance, while being so used, for the common carriage of persons, whereby the safety of any person shall be endangered, shall be imprisoned in the penetentiary not exceeding three years, or fined not exceeding $5,000.00." (Hurd's Rev. Stat., 1906, p. 681).

I will discuss the second indictment first, as much of what I shall say will also apply to the first.

Let us for a moment discuss that statute. So far as I can learn it was passed in 1874, or at least was in the revision of that date, and has been in force ever since and it seems a little significant that after the exhaustive research of counsel, no prosecution under it can be found in this state. Being a penal statute, it should be, and under the well known rules of construction, is to be strictly construed. By express terms it is limited to "whoever having personal management and control." Of what? A business? A company? A corporation? A railroad? No! "A steamboat or other conveyance used for the common carriage of persons." When? "While being so used." How? "For the common carriage of persons, whereby the safety of any person shall be endangered, shall be imprisoned," etc. I do not think this statute was ever intended to apply to persons having the management or control of the business, such as directors or officers of a corporation.[1]

NOTE 1.—This holding is sustained by many authorities construing analogous statutory provisions.

It is also urged that the indictments are bad, because of the misjoinder of the defendants. An indictment is a charge, against one or more defendants, and additional counts may be added, charging the commission of the offense in different ways, in order that the proof, if it should not be as the pleader anticipated in the first count, would prove the allegations of some one of the others. If there is absolute certainty as to the proof, there is no necessity for more than one count in an indictment for an offense. I do not understand, and I have not been referred to any authority which holds than an indictment can charge part of the defendants in some of its counts and part of them in others, as in both of these indictments, charging the directors alone in some counts, the directors and general manager in others and the general manager and superintendent in still others.[2]

Thus in *Caron v. B. & A. R. R. Co.* (Mass. 1895), 42 N. E. 112, the court said:

"We think, therefore, that by the words 'any person . . . . who has the charge or control' is meant a person who, for the time being at least, *has immediate authority to direct the movements and management of the train as a whole,* and of the men engaged upon it."

And in *Thyng v. Fitchburg R. R.* (Mass. 1892), 30 N. E. 169, it was said that the statute "seems to contemplate the danger from a locomotive engine or train as a moving body, and to provide against the negligence of those who, either wholly or in part, control its movements. The charge or control is of that whose characteristic is rapid and forceful motion."

See also to the same effect *Fairman v. B. & A. R. R. Co.* (Mass. 1897), 47 N. E. 613; *L. & N. R. R. Co. v. Richardson* (Ala. 1893), 14 So. 209; *Davis v. N. Y., etc., R. R. Co.* (Mass. 1893), 34 N. E. 1070; *Steffe v. Old Colony R. R. Co.* (Mass. 1892), 30 N. E. 1137; *Cox v. Railway Co.,* 9 Q. B. Div. 106, and on the meaning of "personal management" or "personal control" in general, see *Mulford v. Gibbs,* 41 N. Y. S. 273; *Prince v. Brett,* 47 N. Y. S. 402; *Coburn v. Kerswell,* 35 Me. 126; *Youst v. Willis* (Cal.), 49 Pac. 56, and vol. 5 Century Dict. and Cyc. title "personal"; Standard Dict. title "personal."—Ed.

NOTE 2.—The following authorities support this holding: *State v. Daubert,* 42 Mo. 242; *McMullin v. Church,* 82 Va. 501; *Howard v. State,* 40 So. 653 (Miss.); *McElroy v. United States,* 164 U. S. 76.—Ed.

But it is urged by the prosecutor, that he can nolle the counts which charge separate defendants, thereby leaving only those counts which charge the same defendants. An indictment is a charge against a certain person or persons, with the commission of an offense, but the separate counts must charge the same defendants with the same offense, but not necessarily of having committed it in the same way. For example, A is found dead in a pool of water. B and C are indicted. One count charges them with having murdered him by choking him; another count by striking him on the head; another by drowning him. The defendants are the same, the offense is the same but the manner of committing it is different. I think both indictments are bad for that reason, nor do I believe it will make such an indictment good to nolle the bad counts. I do not think you can make a good indictment out of a bad one by nollying the bad counts.

It is also urged that these indictments are bad because there is no joint legal duty and responsibility resting upon the defendants. In other words, the duties and responsibilities resting upon the directors were not the same as upon the general manager or the superintendent. Consequently the violation of the duty owing by some of the defendants would not apply to others. As was said in the Ford Theater Case (*Ainsworth v. United States,* 1 App. Cas. [D. C.] 518), the duties resting upon the architect who drew the plans and specifications for the improvement, were different from the superintendent who had general supervision of the work and also of the foreman directly in charge of the men who excavated the earth beneath the supports, and thereby caused the building to collapse.[3]

---

Note 3.—The case of *Ainsworth v. United States,* 1 App. Cas. 518 the leading case on the subject, is decisive of the point. The opinion contains a masterly and logical exposition of the doctrine of misjoinder. To the same effect, see 21 Cyc. Law and Proc. p. 839; *People v. Davis,* 1 Ill. C. C. 217, 241; *Commonwealth v. Miller* 2 Pars. Sel. Eq. Cas. 480; *United States v. Davis,* 33 Fed. 621; Wharton's Crim. Pl. and Pr. (9th ed.) sec. 303.

The rule in civil cases is the same. Thus, a master and servant

There is no question in my mind as to the criminal liability of directors of a corporation in certain cases of neglect of duty. There are certain duties and responsibilities resting upon the board of directors, which they are no more at liberty to violate or disregard than those resting upon individuals, and in many ways may be likened to the owner in case the business was owned and conducted by an individual instead of a corporation. To say that the owner of this railroad would be jointly liable, criminally with the superintendent or general manager, who negligently or wilfully gave orders which resulted in the wreck, or with the motorman who negligently or wilfully ran his car into another, either in obedience to or in direct violation of those orders, would not, upon the mere statement of the proposition, meet the approval of any fairminded person. To include the directors with the other defendants, in these indictments, I think makes them bad.[4]

cannot be jointly sued for the tortious act of the servant. See *McNemar v. Colin*, 115 Ill. App. 31; *Berghoff Brewing Co. v. Prgbylski*, 82 Ill. App. 361; *Schmidt v. Balling*, 91 Ill. App. 388.—Ed.

Note 4.—It is well settled that to render a director or an officer of a corporation criminally liable, for causing death he must personally participate in the acts causing the death.

A leading case is *People v. Clark*, 8 N. Y. Crim. Rep. 178, 14 N. Y. S. 642, where the authorities are reviewed. The defendants there were indicted as the president and directors of a railroad company for violation of a statute prohibiting the heating of cars by stoves. The court concluded:

"Where a statute prohibits the doing of an act by a class of persons * * * all *active* participants in such violation are equally guilty, be they directors or other agents or servants of the corporation; the directors not because they are directors, but personally; no individual however, being liable who does not personally participate in the doing of the act. * * *"

In *State v. Young*, 56 Atl. 471, 26 N. J. Law, 264, a verdict of acquittal was directed in a prosecution for manslaughter against the president, vice president, executive committee, general superintendent, etc., of a street railway company for causing the death of a passenger at a grade crossing. Judge Gummere stated the rule thus:

It is urged that each and every count in both indictments is bad for duplicity.  An indictment should be certain and specific as to the defendants, the offense, and the manner of its commission, so that the plea of "not guilty" will raise a

"The question of criminal responsibility of the individual officers or agents of the company is a much narrower one than that of the civil responsibility of the corporation.  It must appear that each one of these directors or officers, to be responsible criminally, has been guilty of gross negligence, either in the doing of, or in the omission to do, some specific act, which was rendered necessary in the performance of his duty to the children who rode on that car."

The rule is laid down in 21 Am. & Eng. Ency. of Law (2nd ed.) 896, thus:

"In order to hold an officer or agent criminally liable individually for an offense committed by the corporation, or by its officers or agents, it must be shown that he had some actual personal connection with the illegal act charged."

In 3 Cook on Corporations, sec. 908, it is said:

"Directors are not criminally liable for accidents where they were not personally in charge of the running of the road."

And see the charge to the jury of Judge Kellogg of the New York supreme court (yet unreported), rendered December 18, 1907, in *People v. Smith* (an indictment against the vice president of the N. Y. Central & H. R. R. R. Co., on account of the death of certain passengers in a railway wreck).  For the decision on the motion to quash the indictment see *People v. Smith*, 105 N. Y. S. 1082, decided September 2, 1907.  To the same effect see *State v. Parsons*, 12 Mo. App. 205; *State v. Gilmore*, 24 N. H. 461; *State v. Patton*, 26 N. C. 16; *People v. White Lead Works*, 82 Mich. 471; *State v. Great Works Milling & Mfg. Co.*, 20 Me. 41; *Commonwealth v. Demuth*, 12 S. & R. 389; *In re Greene*, 52 Fed. 119; *State v. Wabash R. R. Co.*, 115 Ind. 466; *City of Wyandotte v. Corrigan*, 35 Kan. 21, 10 Pac. 99; *Ex parte Grand Trunk Railway Co.*, 18 Lower Canada Jurist, 141; *State v. White* (Mo.), 69 S. W. 684; *People v. England*, 27 Hun, 139; *State v. Barksdale, Mayor*, 5 Humph. 154; *Kane v. People*, 3 Wend. 363; 3 Thompson on Corporations, sec. 4114; Bishop's New Criminal Law (8th ed.), vol. 1, sec. 424; vol. 2, secs. 1270, 1282.

It is equally well settled that to render a person liable on account of negligent omission whereby a death is caused, the omission must be due to gross and culpable negligence and must have resulted from the neglect of a plain duty imposed upon the defendant *personally* and the death must be the direct result of such negligence.

single issue upon each count. If more than one issue is raised upon any count by that plea, the count is duplicitous, and would be bad for that reason in a common law declaration.

Take for example the first count of No. 3762. It alleges that on August 30, 1907, Potter, Peabody, Underwood, Sampsell and Grosscup "were and then and there had assumed the offices of and duties of directors of" said railway company, a corporation, etc.. and the said Potter "was and then and there had assumed the office and duties of president of said Mattoon City Railway Company, and Fred More was, and then and there had assumed the office and duties of superintendent of said railway company," and "that on the day aforesaid the said Mattoon City Railway Company owned and was then and there operating a single track railroad in and between the cities of Mattoon and Charleston, in said county and state," etc.; that on that day said directors and More composing said board and superintendent as aforesaid

This rule is laid down and established by numerous authorities. See 21 Cyc. Law & Proc. pp. 765, 768, .769 (nn. 92, 93), 770; Clark's Crim. Law, p. 174; Wharton on Homicide (3rd ed.), secs. 446, 447, 449, 451, 457, 466, 467, 468, 480; 21 Am. & Eng. Ency. of Law (2nd ed.), pp. 99, 194; Kerr on Homicide (ed. 1891), sec. 157; *Regina v. Pocock* (a leading case), 5 Cox C. C. 172, *s. c.* (somewhat differently reported), 79 Eng. C. L. 34; *Rex v. Allen*, 7 Car. & P. 153; *Rex v. Green*, 7 Car. & P. 156; *Regina v. Haines*, 2 Carr. & K. 368; *United States v. Knowles*, 4 Sawy. 517, Fed. Cas. 15,540; *Thomas v. People*, 2 Colo. App. 513, 31 Pac. 349; *Hilton's Case*, 2 Lewin C. C. 214; *Regina v. Bennett*, 8 Cox C. C. 74; *Anderson v. State* (Tex.), 11 S. W. 33; *People v. Eberly*, 2 Colo. Law Rep. 78; *Johnson v. State*, 61 L. R. A. 277 n.; *Ainsworth v. United States*, 1 Appeal Cas. 518; *Fenton's Case*, 1 Lewin C. C. 179; *People v. Munn*, 65 Cal. 211; 1 East's .Crown Law, p. 265; Wharton's Criminal Law (9th ed.), sec. 1580.

That the negligence must be gross and culpable is established by the following additional authorities: *Regina v. Elliott*, 16 Cox C. C. 710; *Regina v. Finney*. 12 Cox C. C. 625; *Regina v. Gregory*, 2 Fost. & Finl. 153; *Beek v. People*, 125 Ill. 584; *State v. O'Brien*, 32 N. J. L. 169; *Fitzgerald v. State*, 112 Ala. 34, 20 So. 966; 8 Criminal Law Magazine, p. 124.—Ed.

27

"had then and there taken on themselves the management, control, and supervision of said railroad and the operation and conduct of the said passenger and freight motor cars of said company on said railroad, and it was then and there the duty of the said Potter, Peabody, Underwood, Sampsell, Grosscup and More, as the board of directors and superintendent as aforesaid, to then and there provide and establish with due care and circumspection for the guidance of the employees of said company and for the protection of the lives and safety of the passengers then and there carried upon the aforesaid passenger cars, proper and sufficient rules and regulations relating to the safe and efficient operation of the said passenger and freight motor cars upon said single track railroad so that the lives and safety of the passengers carried" would be secured, etc., "and to then and there take care and see to it that such rules and regulations as aforesaid were then and there provided, established and enforced in the operation and running of the aforesaid cars on said railroad, yet, not regarding their duty in that behalf and without due care and circumspection for the lives and safety of the passengers then and there being carried on the aforesaid passenger motor cars the said" directors and More, as the board of directors and superintendent as aforesaid, "did then and there feloniously and wilfully fail, neglect and omit to provide and establish, and to take care and see to it that said company and railroad were then and there provided with proper, sufficient, and safe rules and regulations for the guidance of the employees of said company in and about the operation and running of the passenger and freight motor cars of said company on said railroad as aforesaid so that the safety and lives of the passengers then and there being carried on the said passenger motor cars would be secured, and did then and there feloniously, wilfully and negligently and without due caution and circumspection, provide and establish and enforce unsafe, improper and insufficient rules and regulations for the guidance of the employees of said company and for the preservation of the lives and safety of the passengers then and there being carried upon said pas-

senger motor cars, by reason whereof, and the aforesaid feloni-
ous and wilful neglect and omission of the said 'directors
and More,' a passenger motor car of said company and a
freight motor car of said company, being then and there
propelled by electricity in opposite directions and toward
each other and at a high rate of speed along and upon said
single track railroad on the day aforesaid, and in the county
and state aforesaid, came into violent contact and collision
and said cars were then and there mashed, crushed and
driven together and upon and into each other, and by means
thereof mortal wounds were then and there inflicted upon
and in the head and body of William Nelson,'' a passenger,
etc.

A count should allege the existence of facts upon which
the law creates the duty, and it is not sufficient to allege that
it then and there became and was the duty of defendants to
provide and establish with due care and circumspection for
the guidance of the employees and safety of the passengers,
proper and sufficient rules and regulations relating to the
safe and efficient operation of said freight and passenger
cars, and to see that they were enforced in the running of
said cars.

Then again, line 69, page 21, ''did then and there feloni-
ously, wilfully and negligently and without due caution and
circumspection, provide and establish and enforce unsafe,
improper and insufficient rules and regulations,'' etc.   Line
59 alleges the defendants did ''fail, neglect and omit to pro-
vide and establish,'' proper, sufficient, and safe rules, etc.
In line 59, committed manslaughter by negligently omitting
to provide and enforce safe rules, and in line 69, committed
manslaughter by negligently providing and enforcing unsafe
rules.

Again no rule or regulation is alleged that the court may
judge as to whether or not it is safe, reasonable, proper or
sufficient.   What rules were violated?   How were the de-
fendants negligent?

Again, the allegations should show a direct casual connec-
tion between the act and the death.   To allege that A shot B

with a gun and that B afterwards died is not sufficient. So
far as the allegations of this count are concerned, one or
both motormen may have been, at the time of the accident,
wilfully violating some positive rule of the railroad, which
resulted in the collision.

Neither do I see how the directors can be held liable at
common·law for manslaughter. They cannot be held liable
civilly,[5] and no authority has been cited, which holds them

NOTE 5.—Directors and officers of corporations are not civilly liable
to third persons for negligence, unless they personally participate in
the acts of negligence and even where directors or officers are guilty
of negligence a distinction is to be noted between acts of nonfeas-
ance and acts of misfeasance. While it may be the duty of a particu-
lar corporation, as for instance a common carrier, to use the utmost
degree of care towards the public, the officers and directors of
such corporation are merely its servants or agents and their duty
is owing to the corporation and not to third persons. Consequently
they are not liable to third persons for acts of nonfeasance.

In Shearman & Redfield on Negligence (5th ed.) sec. 243 the rule
is stated:

"The directors or other officers of a corporation cannot be held
liable to a stranger for any omission on the part of the corporation
to perform a duty to him, even though such omission is the direct
result of the vote of such directors, who have exclusive control of
the corporate business." See also sec. 244.

The leading case is *Lane v. Cotton*, 12 Mod. 472, a decision by
Holt, J., where the court said:

"His neglect is only chargeable on his master or principal for
a servant or deputy, quatinus such, cannot be charged for neglect,
but the principal only shall be charged for it, but for a misfeasance
an action will lie against a servant or deputy, but not quatenus a
deputy or servant, but as a wrongdoer."

See also to the effect that agents are not liable to third persons
for acts of nonfeasance: *Murray v. Usher*, 117 N. Y. 542; *Van Ant-
werp v. Linton*, 35 N. Y. S. 318; *Ballow v. Farnum*, 9 Allen, 47;
*Denny v. Manhattan Co.*, 5 Denio, 639, aff. 2 Denio, 115; *Dean v.
Brock* (Ind.), 38 N. E. 829; *Regina v. Smith*, 11 Cox C. C. 210; *De-
laney v. Rocherau*, 34 La. Ann. 1123; *Lundy v. Delmas*, 104 Cal. 655;
*Davenport v. Newton* (Vt.), 42 Atl. 1087; *Fanning v. Osborne*, 102
N. Y. 441; *Feltus v. Swan*, 62 Miss. 415; *Labodie v. Hawley*, 61 Tex.
177; *Reid v. Humber*, 49 Ga. 207; *Steinhauser v. Spraul*, 127 Mo.
541; *Drake v. Hogan* (Tenn.), 67 S. W. 470; *Bassett v. Fish*, 75 N.

criminally liable in such a case.[6] That the corporation is liable in damages, no one will dispute. That the person or persons directly responsible for the death is criminally liable I do not doubt. Suppose the board of directors, or the super-

Y. 303; *Wahrman v. Board of Education*, 187 N. Y. 331, 80 N. E. 192; Wharton on Homicide. (3rd ed.) p. 682; Mechem on Agency (ed. 1889), secs. 539, 569, 570; 1 Ency. of Law (2nd ed.), p. 1131; Ewell's Evans on Agency, p. 438.

But in *Baird v. Shipman*, 132 Ill. 16, it was held that where an agent of a nonresident owner of a house and lot, having the same charge of the property as the owner would have had were he present, leases the same, with knowledge or notice that one of the stable doors on the premises is unsafe and in a dangerous condition, and an expressman, while engaged in delivering a load of kindling wood in the barn for one of the tenants, was killed by the falling of such door, that the agent was liable to the personal representative of the deceased in damages and could not excuse himself on the plea of the liability of his principal. This decision is against the great weight of authority in so far as it tends to hold that an agent is liable to third persons for mere acts of nonfeasance, but the case is usually classed as one in which the agent was guilty of misfeasance and not mere nonfeasance. This on the theory that as the agent had entered upon the execution of a particular work it was his duty to use reasonable care in the manner of executing it. See vol. 1, Ency. of Law (2nd ed.), p. 1132. But the decision is reconcilable with the general rule above stated for the reason that as the owner was outside the jurisdiction of the court the agent must be treated as the person in control. This distinction would not exist in the case of a corporation which can act only through its officers and agents, and consequently the corporation would be liable under the doctrine of respondeat superior. See also Mechem on Agency, sec. 572: Wharton on Negligence, sec. 535, and *Cameron v. Kenyon-Connell Comm. Co.* (Mont.), 56 Pac. 358, which lean to a contrary view. In the latter case the court said:

"Nonexecution which resulted in the positive act of a creation and maintenance of a continuing nuisance on account of which a third person was killed, amounts, unless explained, to misfeasance upon the part of all the directors of the company."

The proposition that directors are only liable for negligence where they personally participate in the acts of negligence is sustained by the following authorities: *Belo v. Fuller* (Tex.), 19 S. W. 619; *Folwell v. Miller* (C. C. A.), 145 Fed. 495; *Henry v. Brackenridge*, 48 La. Ann. 950; *Bianki v. Greater Am. Exp. Co.* (Neb.),

intendent provided proper rules, and the motorman either
negligently or wilfully, in violation of the rule, causes a death,
upon what legal principle would the directors or superinten-
dent be criminally liable?

Suppose I tell my man to take the horse to the shop to be
shod, and on the way, he negligently or wilfully runs
over a child in the street, would anyone say I could be con-
victed of manslaughter and confined in the penitentiary?

The mere statement of the proposition is abhorrent to any
fair-minded person. If that was the law no one would dare
engage in any business beyond that of driving his own team,
for fear of the criminal consequences.

As to the objection to the legality of the indictments as
found and returned by the grand jury according to the affi-
davits filed. The grand jury met on October 14, 1907, and
returned indictments against all these defendants in these
cases, and finished the work for that term on October 30,
1907, but were told by the presiding judge to not adjourn,
as they might be needed again and if so they would be noti-
fied. The grand jury did not adjourn, but as the affidavits
say, "drew their pay and went home." All the indictments
against these defendants, returned at that time, have been
nolled. On January 6, 1908, the members of the grand jury,
in response to a postal card sent them by the sheriff upon

92 N. W. 615; 10 Cyc. Law & Proced., p. 829; see also note to *Nun-
nelly v. Southern Iron Co.*, 28 L. R. A. 421. *Contra, Nunnelly v.
Southern Iron Co.* (Tenn.), 94 Tenn. 397, 28 L. R. A. 421; *National
Cash Register Co. v. Leland*, 94 Fed. 502 (C. C. A.). Compare *Peck
v. Cooper*, 112 Ill. 92.—Ed.

NOTE 6.—In Wharton on Homicide (3rd ed.), p. 683, sec. 447, the
rule is stated:

"So far as concerns homicide, we may safely say that there is
no criminal responsibility where the defendant would not have been
civilly liable at the suit of the party injured, had he survived the
injury."

And in *Regina v. Burchall*, 4 Fost. & Finl. 1087, Judge Willes said
that until he saw a decision to the contrary he should hold that a
man was not criminally responsible for negligence for which he
would not be responsible in an action.—Ed.

notice from the clerk, that the judge wanted them to return, met at 1:30 p. m. and returned all these and other indictments into court, and adjourned at 2:45 p. m.

Section 19, chapter 78, Rev. Stat. of Ill. provides that "The judge of any court of record of competent jurisdiction may order a *special* venire to be issued for a grand jury at any time when he shall be of opinion that public justice requires it. The order for such *venire* shall be entered on the records of the court by the clerk thereof; and such clerk shall forthwith issue such *venire* under his hand and the seal of the court, and deliver the same to the sheriff, who shall execute the same by summoning, in the same manner now provided or that may hereafter be provided by law for summoning jurors, twenty-three persons, qualified by law, to constitute a grand jury."

, Objection is made that several of these grand jurors were summoned by the sheriff enclosing a copy of the venire and a return card to himself, in a letter to the juror upon which the juror acknowledged service and promised to be present. This practice has obtained in a number of counties in this state. No authority has been cited upon that objection, and since every juror reported and was impaneled, I will not hold the grand jury was illegal for that reason. I think the service was not as required, and had some one so notified failed to appear, and his place filled, it might make it an illegal grand jury. I would not want to issue an attachment upon that notice.

"If a grand jury shall be required by law or by the order of the judge for any term of court, it shall be the duty of the county board * * * to select twenty-three persons," etc., and to cause *their* clerk within five days thereafter to certify them to the clerk of the court, etc. (sec. 9, chap. 78 Rev. Stat. of Ill.)

It is objected that because the clerk of the county did not so certify these persons to the circuit clerk for seven days after they were selected, the grand jury is illegal. I think that provision of the statute is directory only, and failure

of the clerk to so certify them, should not be held to avoid the grand jury.

It is also urged that these indictments are void, because they were not read to the grand jury, and it heard no evidence at that meeting, and all the knowledge it had of their contents was the statement of the prosecutor, to the effect that the others returned might prove insufficient or defective, and he desired these returned. I do not think it can be said that no evidence was heard in support of these indictments. It is conceded that the grand jury heard evidence in these cases in October, and the mere fact that they were not prepared and returned till January 6, would not avoid them. I know of no law or reason why the grand jury should return indictments within any specified time.[7]

It is also urged that because the witness Jenkins was sworn by another member of the grand jury, in the absence of the

NOTE 7.—In *State v. Ivey*, 100 N. C. 541, 5 S. E. 407, an indictment was returned by the grand jury and being insufficient was quashed. Thereupon the same grand jury returned a second indictment without re-examining the witnesses on hearing further evidence. The court held the indictment insufficient for this reason.

It is believed that this decision cannot be sustained either on principle or authority and that the decision of Judge Thompson in the above case is correct.

In Bishop's New Criminal Procedure, sec. 870, it is said:

"The grand jury at any time during the term of organization and service may find a second indictment as a substitute for the first without hearing the evidence anew."

And in 10 Ency. Pl. & Pr. 395 n., it is said:

"Where an indictment is defective or is recommended to the same grand jury, it may find another indictment without recalling the witnesses who had already been before it."

The same principle is laid down in the following authorities: *Whiting v. State*, 48 Oh. St. 220; *McIntyre v. Commonwealth* (Ky.), 4 S. W. 1; *State v. Clapper*, 59 Ia. 279; *Creek v. State*, 24 Ind. 151; *State v. Peterson*, 61 Minn. 73, 63 N. W. 171; *Commonwealth v. Woods*, 10 Gray, 477; *Commonwealth v. Clune*, 162 Mass. 206; 17 Am. & Eng. Ency. of Law, 1285. In *Spannenberger v. State*, 53 Ala. 481, and *State v. Grady*, 12 Mo. App. 361, the rule was denied with respect to the finding of a former grand jury.—Ed.

foreman, and testified in these cases, that these indictments are illegal.

Section 17 provides: "After the grand jury is impaneled, it shall be the duty of the court to appoint a foreman, who shall have power to swear or affirm witnesses to testify before them," etc. While the statute does not exclusively authorize the foreman to swear witnesses, I am inclined to think that was intended by the legislature. Certainly he is expressly given that authority and had the legislature intended, it could as easily have said "all members" as "the foreman." But the affidavits show that other witnesses were sworn by the foreman, and testified upon the same matters as Jenkins, and if his testimony was improperly received, there still remains sufficient evidence.

It is also urged that the state's attorney should not have been present when these indictments were voted. I know of no statute which authorized the state's attorney to be present in the grand jury room, during its deliberations, but so far as I know, it is the general custom throughout the counties of this state. He generally conducts the examination of witnesses and prepares all indictments. It would be practically impossible to leave the preparation of indictments to the members of the grand jury and expect good indictments. It is pretty difficult for an experienced lawyer to get them sufficient in many cases. I think the state's attorney may properly be with the grand jury and advise them and counsel with them, as to their duties and work, so long as he does not prevail upon it to return an indictment which it would not otherwise have done, for it would then be his, and not the grand jury's.[8]

It is also urged that when the grand jury returned their indictments October 30, and as the affidavit states "drew their pay and went home," that terminated their authority and duty as a grand jury. Had the grand jury adjourned for a week, a month, or until January 6, 1908, I would have

NOTE 8.—See *Gitchell v. People*, 146 Ill. 175, 187, and *Regent v. People*, 96 Ill. App. 189, 196.—Ed.

no doubt of their authority to act at such adjourned meeting. But it seems to me that under the facts in this case they were through, providing the judge should not order them reconvened. In other words, to all intent and purposes they were discharged, if he did not send for them, but if he should send for them they were not discharged.

The affidavits state that the judge made no order on his docket as to the recalling of the grand jury, but that the clerk without legal authority, wrote it up as an order of court. I cannot see how that can tend to support the indictments for if the judge made no order, then the meeting on January 6 was without the order of the judge, and certainly it will not be claimed that the clerk or sheriff had power to recall a grand jury. But I think it was the duty of the clerk to correctly record the court proceeding of the day, and if the judge so directed the grand jury the court proceeding should so show. Still, I am aware of no law which places the grand jury under the direction of the judge, clerk or sheriff, during the entire term of court, to be called together at any time to make presentments.

Section 19 above quoted contemplates just such a situation and provides that a special venire may be ordered by the judge at any time when he shall be of opinion that public justice requires it, and provides how it shall be done. This section of the statute is absolutely of no force, if the methods pursued in this case are to be held legal. If that is the law, a grand jury would be a sort of censor over the people of the county from one term of court till the next, come and go as they pleased, never adjourn, meet at any time of their own notion, or at the request of the judge, clerk or sheriff, and return a few indictments and separate at will.

I think that when the grand jury quit on October 30, 1907, its authority ended, and all the indictments returned on January 6, 1908, were without authority and void. The motions will be sustained, and each of said indictments ordered quashed and the defendants discharged.